Gary L. Lassen ( # 5259)
LAW OFFICE OF GARY L. LASSEN, PLC
2020 North Central Avenue
Central Park Square, Suite 1100
Phoenix, AZ 85004
Telephone: (602) 252-1205
Facsimile: (602) 254-6982

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RAYMOND PARENTEAU AND JOLENE PARENTEAU, husband and wife, and RAYMOND AND JOLENE PARENTEAU ON BEHALF OF THEIR MINOR SON, CP,<br><br>Plaintiffs,<br><br>vs.<br><br>PRESCOTT UNIFIED SCHOOL DISTRICT, AN ARIZONA SCHOOL DISTRICT, AND KEVIN J. KAPP, SUPERINTENDENT, OF PRESCOTT UNIFIED SCHOOL DISTRICT, ET AL.,<br><br>Defendants. | Case No.: CV07-08072-PCT-NVW<br><br>**PLAINTIFFS' OPENING TRIAL BRIEF** |

This matter arises out of a provision of a special education to CJP. It includes an appeal from an Administrative Law Judge decision ruling that the Prescott Unified School District (hereinafter "Prescott") provided CJP a free, appropriate, public education, or ("FAPE"), during the 2003-04, 2004-05 and the 2005-06 school years.

The 2006-07 and 2007-08 school years are not in dispute for purposes of whether the district denied CJP a free, appropriate, public education.

This Opening Trial Brief is submitted as ordered by the Court to address issues presented under 20 U.S.C. § 1400, *et seq.*, the "IDEA", to be presented to the Court in a bench trial scheduled to begin November 18, 2008.

This Opening Trial Brief will address:

    A. Introduction and Factual History;

    B. Legal Standard of Review;

    C. The Applicable Law; and

    D. The Witnesses and Evidence to be Presented at Trial;

**A.**     <u>**Introduction and Factual History**</u>

Plaintiffs enrolled their child CJP in Prescott Unified School District in the Fall of 2003. At that time, Prescott arranged for an independent outside evaluation by a licensed psychologist who conducted a psychological evaluation as is required to be performed every three years. Plaintiffs generally liked the personnel that attended their child, but they became increasingly frustrated that they saw no learning taking place; they saw no improvement in CJP's skills or any measurable learning. Plaintiffs participated in the annual IEP process, but they continued to see no progress and no learning. In the Fall of 2006, Plaintiffs began to educate themselves regarding special education law, and instituted various due process proceedings. Matters relative to the 2006-07 school year have been resolved and are not in dispute here. Plaintiffs on a *pro se* basis filed a request for due process hearings arising out of the alleged denial of a free, appropriate, public education to their child for the 2003-June, 2006 period of time. The 2003-04 school year was dismissed by the administrative law judge. It is Plaintiffs' position that they were misled by Prescott and failed to know their rights under IDEA. For example, it is contended that Prescott failed to inform Plaintiffs that they had a right to have a person on the IEP team who was an expert in the field of autism. No such person participated as a member of the IEP team for any of the aforementioned years. The IEP team must

include at least one teacher or specialist with knowledge in the suspected area of disability, here autism. See *Seattle Sch. Dist. No. 1 v. B.S.*, 82 F.3d 1493, 1499 (9th Cir. 1996).

At principle issue in this appeal is the failure of CJP to make any significant progress toward goals set forth in the IEPs. The ALJ in her decision found for the District and wrote, under Finding of Fact No. 27, as follows: "according to progress reports, student met expectations to make sufficient progress to achieve the goals set forth in the IEP." The ALJ essentially upheld the District because the District said CJP made progress. In fact, CJP failed to make any progress toward goals based upon objective measured data collection, and any reference to meeting expectations or improvement were totally subjective. Under Conclusion of Law No. 11, the ALJ dismissed the claim that the IEP's goals and objectives were inappropriate, vague, generic, absent strategies for evaluation and incapable of being measured (in order to determine progress) and that there are no records of measurement. The ALJ ruled as follows:

> "Petitioners failed to present any testimony or evidence regarding any specific goals and objectives that were contained in either the IEP at issue or any more appropriate goals and objectives. Although some information was brought forward through testimony and in the educational records, Petitioner presented little information regarding student's capabilities and skills. Petitioner failed to present any evidence with regard to measurements or progress toward the goals and objectives in the IEP and the alleged insufficiency of the measurement and concluded, therefore, that petitioner failed to sustain his burden on this claim."

The ALJ ruled in Prescott's favor because District officials said they saw progress. Plaintiffs will present precise evidence at the trial before the Court in this matter through the testimony of CJP's parents, Ray and Jolene Parenteau and their experts, Dr. Gentry and Carey Burgess, that will demonstrate that CJP was denied a "FAPE." Dr. Gentry, in his reports, states as follows:

> . . . The IEP, or parts thereof, were not appropriate for a student, especially one diagnosed with autism. For example, very few of the

> goals and objectives were measurable in a way that would provide proof that the student was progressing toward meeting that goal. There was no baseline data recorded or documented to provide a beginning level of skill to measure progress or improvement against.

(Gentry Report, June 30, 2008)

This case presents squarely the issue of whether a school district may successfully claim that it complied with the requirement of providing a free, appropriate, public education ("FAPE") to a child when it provides only procedural compliance with the law, does not provide experts on the particular disability the child possesses as part of the IEP team, does not construct, modify, and measure progress under the IEP in accordance with measurable goals and objectives, and does not convey or provide education consistent with the best practices for education of children with autism, and results in absolutely no educational progress. The evidence provided will conform to the deposition testimony of Dr. Joseph A. Gentry where he testified that CJP made more progress from January, 2008 to October, 2008 than he made in the five previous years as a student at Prescott. How can this be? The answer is that essentially no learning was occurring. Prescott failed to meet its even minimal responsibilities for compliance with IDEA.

### B. Legal Standard of Review

The District Court, in reviewing the decision of an Administrative Law Judge under IDEA, sits in an unusual position. The statute provides that a district court "shall receive the records of the administrative proceedings and shall hear additional evidence at the request of a party and basing its decision on a preponderance of the evidence, shall grant such relief as the Court determines as appropriate. 20 U.S.C § 1415(i)(2)(c). By allowing a District Court to consider matters outside the administrative record and by imposing a preponderance of the evidence standard of review, the IDEA allows a District Court to conduct a more searching review that is more typical of a *de novo* review. *Ojai Unified Sch. Dist. V. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993).

Courts must give due weight to the administrative proceedings but the Court is free to accept or reject the findings in whole or in part. *Capistrano Unified School*

*District v. Whartonburg*, 59 F.3d 881, 891 (9th Cir. 1995). The degree of deference to give the hearing officer's determination is a matter of District Court discretion. See, *Ojai Unified School District v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993). When exercising its discretion to determine what weight is to give the hearing officer's finding, one factor the Courts have found useful is to examine the thoroughness of the findings. The amount of deference accorded the hearing officer's finding increases when they are "thorough and careful." *Whartonburg*, 59 F.3d @ 892.  See, also, *County of San Diego v. California Special Education Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). The Ninth Circuit gives the state hearing officer's decisions substantial weight when it evinces a careful and impartial consideration of all the evidence and demonstrates a sensitivity to the complexity of the issues presented. In addition, a reviewing court that has before it additional evidence not considered or presented at the administrative level will naturally defer less to the administrative decision. *School District of Wis. Dells v. Little George*, 295 F.3d 671, 675 (7th Cir. 2002).

The IDEA specifically notes that its implementation has been impeded by low expectations. 20 U.S.C. § 1400(c)(4) and that almost 30 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by having high expectations for such children. 20 U.S.C. § 1400(c)(5)(a). The Courts must be careful to avoid finding that a disabled child is incapable of making much progress unless there is significant evidence to that effect. The Ninth Circuit has noted that a court's refusal to ignore the substantial contrary evidence upon which the hearing officer relied and noted that if the views of school personnel regarding an appropriate educational placement for a child were conclusive, then administrative hearings conducted by an impartial decision maker would be unnecessary. The Court in *KS v. Fremont Unified School District*, 545 F.Supp. 995 (2007) upheld the parents and overturned the ALJ.

### C. **Prescott Failed To Provide Free, Appropriate, Public, Education ("FAPE") To CJP As Required By Law**

At issue in this case is the interpretation of what is currently required under IDEA. In 2005, the United States Congress amended IDEA by passing the Individuals with Disabilities in Education and Improvement Act (IDEA, Public Law 108-446). This case presents the question of whether the parents of a child who has regressed intellectually, has made no progress academically, and repeatedly fails to meet goals and objectives, are required to stand by and watch while the school district implements the same program and the same form of IEP that has provided no educational benefit in the preceding year. Here, CJP failed to make any measurable progress during the 2004-05 and 2005-06 school years. Dr. Gentry observed that there were goals contained in CJP's 2003 IEP that addressed skills he lacked when Dr. Gentry first observed CJP in 2007. (Gentry Deposition, pg. 161, lines 14-18).

The case of *Hendrick Hudson Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034 (1982) is the first U.S. Supreme Court case regarding the standard to which school districts are held under EHA/IDEA's predecessor and *Rowley* set forth what has been often cited as the "educational benefit standard." At issue in this case is whether the law, as amended several times since *Rowley*, and as interpreted by numerous Circuits under its application to specific facts, is still the standard for determining whether a free, appropriate, public education is being provided. For example, the Fourth Circuit has found that:

> Rowley recognized that a FAPE must be tailored to the individual child's capability and that while one might demand only minimal results in the case of the most severely handicapped children, such results would be insufficient in the case of other children. Clearly Congress did not intend that a school system could discharge a student under the EAHCA by providing a program that produces some minimal academic achievement, no matter how trivial, 774 F.2d 636. Also, see, *In re Conklin*, 946 F.2d 306 (4th Cir. 1991).

The basic core of opportunity standard established in *Rowley* is rather low and while it may have been acceptable under the predecessor versions of the Act, such as EAHCA, recent amendments to IDEA which became effective on July 1, 2005 include the following make it clear Congress intended more is required.

> The implementation of this Chapter has been impeded by low expectations, and an insufficient focus on applying replicable research on proving methods on teaching and learning for children with disabilities.

20 U.S.C. § 1400(c)(4) (effective July 1, 2005). The findings further state:

> Almost 30 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by:
>
> a.   Having high expectations for such children . . .
>
> b.   (i)   Meet the developmental goals to the maximum extent possible, the challenges and expectations that have been established for all children; and
>
>      (ii)  Be prepared to lead productive and independent adult lives to the maximum extent possible;

*Id.* at § 1400(c)(5).

Congress did not enact the statutory amendments so that school districts would provide but minimal levels of service. The meaningful benefit requirement means that an IEP in education need to confer a meaningful educational benefit gauged in relation to the potential of the child at issue. The intent of Congress was to require a program providing a meaningful educational benefit toward the goal of self-sufficiency. *Deal v. Hamilton County Board of Education*, 392 F.3d 840, 862, 864 (6th Cir. 2004). The failure of the educational program to focus on progressing CJP toward self-sufficiency and the desired goal of post-secondary educational opportunity represents a failure to confer the benefit now contemplated by IDEA.

The law regarding special education began to change in 1997. Prior to that time the statutory scheme, although similar to what exists today, was the Education for the

Handicapped Children Act of 1975 (EHA), the purpose of which was largely to ensure access to education for disabled children who had been historically marginalized in public schools.  Satisfied that the goal of access had been reached, in 1997 Congress enacted IDEA with the express purpose of addressing implementation problems resulting from "low expectations and an insufficient focus on applying peer reviewed research on proven methods of teaching and learning for children with disabilities".  20 U.S.C. §1400(c)(4).  These goals and efforts were consistent with the purposes of the No Child Left Behind Act ("NCLB"), 20 U.S.C. §§ 6301 and 6578, applicable to all students in emphasizing the importance of ensuring that schools provide "highly qualified" staff and provide teaching methodologies that are based on empirical evidence as constituting the "best practices" for the affected children.

The statute stated its commitment of our national policy of insuring the quality of opportunity, full participation, independent living and economic self-sufficiency for individuals with disabilities.  20 U.S.C. §1400(c)(1).  This represents a significant shift in focus from the status of the law before 1997.  Accordingly, continued reliance upon the Supreme Court decision of *Hendrick Hudson District Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) is misplaced as it interpreted prior law. To the extent that the Supreme Court 26 years ago was interpreting the statute which had no requirement that (1) programming for disabled students be designed to transition them to post-secondary education, independent living or economic self-sufficiency; or (2) that schools review IEPs to determine whether annual goals were being attained, a District Court today must consider that this opinion has been superseded by later legislation and a district's reliance on it must considered misplaced.

Current case law repeatedly emphasizes the necessity of deriving a "meaningful educational benefit" from the programs provided pursuant to IDEA.  See *Deal*, *supra*, *M.L. v. Federal Way School District*, 387 F.3d 1101, 1126 (9th Cir. 2004); *Adams v. State of Oregon*, 195 F.3d 1141, 149 (9th Cir. 1999).  The American Heritage Dictionary

of English Language, 4th Ed. Houghton Mifflin, 2000 defines "meaningful" as 1. having meaning, function or purpose. 2. Fraught with meaning, significant.  It is respectfully submitted that the Court in this case must find that providing the meaningful education of all benefit under IDEA requires programs and results which reflect the access emphasis on preparation for self-sufficiency.  A minimal benefit or *Rowley* analysis is insufficient. The current state of the law is not concerned merely with access to specialized education making annual progress that is more than minimal or whether some trivial benefit exists.

It is inappropriate for a district court to accept, on a wholesale basis, the IEP prepared by the school board that is the root of the litigation. While IDEA does not require school districts to maximize the potential of their disabled students, *Rowley*, 458 U.S. 176, 102 S.Ct. 3034 (1982), it does call for more than a trivial educational benefit and requires a satisfactory IEP to provide significant learning and confer a meaningful benefit. *Ridgewood Board of Education v. NE*, 172 F.3d 238 at 247 (3rd Cir. 1999).

### D. Applying the Law to the Instant Case

This is a case where the IEP goals and objectives were never met and regression in IQ testing occurred (Respondent's exhibits 2 and 6 in the administrative hearing).  From the Fall of 2003 until through the Spring of 2006, no meaningful progress toward goals occurred, and CJP regressed in intellectual and social skills.  Excerpted portions of the administrative hearing below evidence, with the benefit of Dr. Gentry's expert analysis, how inappropriate the education of CJP was. On page 98, line 6, teacher for the 2006-07 school year, Jill Glinert, indicated the then current practice of data gathering was a significant departure from past years.  On page 116, line 5, the Aide stated she had received no training.  On page 120, line 14, the same Aide testified she never worked with autistic children before and never saw CJP's IEP.  It is incredible that the person primarily responsible for teaching CJP doesn't even know what the goals are. On page 134, line 13, the school psychologist testified the I.Q. testing circumstances were not ideal in the fall of 2006, which demonstrated a decline in CJP's I.Q.  On page 144, line 19, the Special Ed Director Martinez states that neither of the former teachers were

"highly qualified" and on page 54, she knew the program needed to be split to provide a separate class for autistic children, but claims there was no space. She acknowledged that it is the teacher's responsibility to allow students to meet goals. She admitted that there were more kids in the class than ideal, on page 172 teacher Kristi Spengler admitted she had no training in the TEACCH methodology and says she had only four hours training in ABA.

While the teacher in 2006-07 indicated she used an "eclectic" approach, that is eclectic with a little "e". This is not the Eclectic approach with a capital "E" that is found in some of the case law which is a systematic approach for small group instruction. The approach chosen by this teacher was simply to pick what she liked to do.

The 1997 and 2005 amendments to IDEA require that a methodology based on peer review research be implemented. While it is true that some cases come down to a challenge of a parental request for a particular methodology, that is not present in the instant case. There was *no* peer review researched instructional methodology in place in Prescott in 2003 through 2006 that complied with the requirements of IDEA. Moreover, it is not an issue as to whether there is a general methodology in place but whether a methodology in place that meets the unique and special needs of each particular child that produces results. According to the testimony of his teacher/aide in 2007 providing "one on one" instruction, CJP finally was making progress with this teacher/aide receiving limited training in the ABA system (Transcript, pg. 62, line 15). It is unfortunate that this system was not available to CJP earlier. At the end of the 2005 and 2006 school years CJP did not meet a single IEP goal, (Transcript, pg. 207, lines 21-25).

Progress needs to be measurable. It, in fact, needs to be measured, and failure to make progress puts the onus on the school district to make modifications in the IEP that would clearly make the IEP in the instant case inappropriate.

The administrative law judge made several errors which are particularly evident now based upon the testimony of expert witness, Dr. Joseph A. Gentry. The administrative law judge in Administrative Decision No. 07C-DP-07019-ADE, in her

decision for the hearing on May 21, 2007, made several errors based upon an inadequate application of law to the facts, which are clearly evident based upon the supplementation of the record in the instant case. In particular, the ALJ rejected all of the following claims Plaintiffs made in their due process requests:

> 1. In the applicable years, Petitioner's IEP team did not contain qualified persons and Petitioner's service providers (teachers and aides) were not qualified persons because they did not have an appropriate amount of training and continued education related to autism and methods (based on Peer Review Research for Teaching Autistic Children) and Respondent had implied, through actions and posturing that the persons were qualified.
>
> 2. In 2004-2005 and 2005-2006 (and in 2003-2004) Respondent cut and pasted the prior years' goals and objectives and simply increased the expectations for a new IEP despite the student failing to make sufficient progress on the prior year's goals.
>
> 3. Respondent pre-selected the cross categorical program or alternatively it was Respondent's unofficial policy or custom to place autistic children in this program regardless of the child's individual needs.
>
> 4. Petitioner's IEP was not geared or relying toward the functional standards for children with significant disabilities ages 3-21.
>
> 5. Petitioner's IEP goals and objectives were inappropriate, vague, generic, absent strategies for evaluation incapable of being measured (in order to determine progress and there are no records of measurement).
>
> 6. Petitioner's minimal advancements cannot be considered to be educational benefits of FAPE and the grades and measurements noted are neither explained nor the result of data gathered.
>
> 7. Petitioner made no objectively determined progress but regressed significantly as shown by several tests.

(ALJ Decision)

The Plaintiffs articulated in impressive fashion the problems with the failure of CJP to receive a free, appropriate, public education ("FAPE").

The expert testimony of Dr. Gentry at his deposition, that took place over 2 days and resulted in a record of 224 pages, and at trial will indicate that a District such as

Prescott needs to have a person who is a qualified expert on autism as a member of the IEP team. No such person participated as a member of the IEP team in the case of CJP during any of the relevant years.

Dr. Gentry issued his opinion on June 30, 2008 that during the 2003-2006 school years, CJP was not receiving an appropriate education based on his diagnosis and his needs, in part, because the IEPs that guide his education were written without the consultation from an expert on autism spectrum disorders and their treatment. The goals and objectives were simply increased and cut and pasted from prior IEPs.

Again, Dr. Gentry pointed out numerous instances in his testimony at his deposition showing the inconsistency of various goals and objectives contained in the IEPs that evidenced that they were provided based on the presumed developmental appropriateness for a child CJP's age, but as in the case of identifying letters of the alphabet and then later drawing letters of the alphabet, some of the goals and objectives were entirely inconsistent. Dr. Gentry testified at his deposition that a single IEP should not contain both of the above-referenced goals, that is identifying letters ought to be a precursor to later writing them out. (Deposition of Dr. Gentry, Pages 192-197).

Plaintiffs maintain that placements in the cross-categorical program was by default a preselected placement, but the ALJ found that Plaintiffs failed to prove predetermined placement even when it was admitted by the Director of Special Education. The undisputed evidence is that Prescott had no separate program for autistic children. Petitioners' IEPs goals and objectives were inappropriate, vague, generic, absent strategies for evaluation, and incapable of being measured. The IEP was deficient, and the education delivered was totally ineffective based upon exactly the objections advanced by Plaintiffs in their due process hearing demand. Dr. Gentry, again at his deposition and at trial, will testify regarding how an operational definition of goals and objectives needs to be made and in a manner that specifically measures progress with a mastery level prescribed.

The evidence, based upon the testimony and review of the records by Joseph A. Gentry, shows a FAPE was not provided and that the original arguments made by Petitioner on a *pro se* basis are meritorious. In the conclusions of law section of the Administrative Law Judge decision, the ALJ addressed the objection regarding vague, generic goals. The Administrative Law Judge determined that Plaintiffs failed to present testimony or evidence regarding how the specific goals and objectives that were contained in the IEPs at issue were inappropriate and failed to provide more appropriate goals and objectives, although some information was brought forth through testimony and in the educational records. Plaintiffs presented little information regarding student's capabilities and skill and failed to present any evidence with regards to a lack of measurement of progress towards the goals and objectives and the IEPs and the alleged insufficiency of the measurements. The ALJ placed the burden of proof to address lack of measurable progress toward goals and objectives on the parents in the absence of any data concluding they had the burden to prove the negative.

The Third Circuit has addressed, probably more than any other, the issue of the legal standard to apply. The Third Circuit, in *Ringwood Board of Education v. KHJ*, upheld a hearing officer's decision that the school district failed to provide an appropriate education when it overturned the District Court's overturning of the ALJ indicating that the record revealed little, if any, evidence justifying the District Court's decision to reject the ALJ's findings. The Court set forth the standard stating that we are well aware that the IDEA does not require school districts to maximize the potential of their disabled students citing *Rowley,* but held that IDEA calls for more than trivial educational benefit and requires a satisfactory IEP to provide significant learning and confer meaningful benefit. *Ridgewood Board of Education v. N.E.*, 172 F3d. 238, 247 (3rd Cir. 1999), citing, *Polk v. Sentinary Susquehanna Intermediate Unit*, 853 F.2d 171, 182, 184 (3rd Cir. 1986).

In sum, Dr. Gentry testified CJP made more progress in the last year than in all preceding years (Deposition of Dr. Gentry, Vol. II, pg. 205, lines 11-25) and that he

(CJP) could have made appropriate progress – or substantive progress had there been an autism consultant from day one (Deposition of Dr. Gentry, Vol. II, pg. 206, lines 18-19).

DATED this 30th day of September, 2008.

LAW OFFICE OF GARY L. LASSEN, PLC

By: s/Gary L. Lassen
Gary L. Lassen (5259)
2020 North Central Avenue, Suite 1100
Phoenix, AZ 85004
Attorney for Plaintiffs

I hereby certify that on September 30, 2008 I electronically transmitted the attached ORIGINAL document to the United States District Court Clerk's Office using the CM/ECF System for filing

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
401 W. Washington
Phoenix, Arizona 85003

By: s/Lisa Balbini