1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Raymond Parenteau and Jolene Parenteau,)    No. CV 07-8072-PCT-NVW
     husband and wife, and Raymond and)
10   Jolene Parenteau on behalf of their minor)   **ORDER**
     son, CP,                               )
11                                          )
                 Plaintiffs,                )
12                                          )
     vs.                                    )
13                                          )
                                            )
14   Prescott Unified School District, an)
     Arizona school district; Kevin J. Kapp,)
15   Superintendent, Prescott Unified School)
     District; John Does I-V; Jane Does I-V;)
16   and Black and White Corporations I-X,   )
                                            )
17                Defendants.                )
                                            )
18   _____)

19

20          On December 11, 2008, the Court denied Plaintiffs' appeal from an administrative

21   decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-

22   1482, and ordered Plaintiffs to show cause why the remainder of the Complaint should not

23   be dismissed with prejudice for failure to state a claim upon which relief can be granted.

24   (Doc. #80.)  Plaintiffs' response included a motion to amend their Complaint.  (Doc. #81.)

25   **I.    Background**

26          On August 10, 2007, Plaintiffs filed their Complaint, which identifies four counts:

27   (1) Violation of IDEA; (2) 42 U.S.C. § 1983 – Violation of IDEA and Section 504 of the

28   Rehabilitation Act of 1973, as amended; (3) Violation of Due Process and Denial of

1  Property and Liberty Interests in a Free Public Education; and (4) 42 U.S.C. § 1983,

2  Americans with Disabilities Act (ADA).  The Complaint alleges only the following facts:

3      a.    Defendants placed Plaintiffs' autistic son Cody in a cross-categorical

4          program for the 2003-04 school year, and "[t]here was no autism program

5          or qualified teachers who knew anything about the teaching of autistic

6          students in the Prescott Unified School District, but the district provided

7          extra compensatory education services to CP as a result of settlement of due

8          process claims filed against the District."  (Doc. #1, ¶ 2.)

9      b.    In the cross-categorical program Cody "made no gains or received any

10          meaningful educational progress."  (*Id.* at ¶ 3.)

11      c.    The District did not have an acceptable program for 2005 or 2006.  (*Id.* at

12          ¶ 5.)

13      d.    The District began an autism program in 2006, but the teacher did not have

14          proper certification and submitted false information on her employment

15          application.  (*Id.*)

16      e.    Plaintiffs "have suffered great financial, emotional, and other distress."  (*Id.*

17          at ¶ 8.)

18      f.    "There is no administrative remedy available as such would be futile under

19          the facts and circumstances as the Parenteaus are seeking compensation for

20          past failures to educate and admitted violations of IDEA and other

21          obligations under State and Federal law."  (*Id.*)

22  (Doc. #1.)  On January 31, 2008, Defendants filed their Answer, which identified forty-

23  five affirmative defenses.  (Doc. #13.)  Their affirmative defenses include, in part:

24      a.    "Plaintiffs failed to exhaust available administrative remedies prior to filing

25          suit as required by 20 U.S.C. § 1415(l), Section 504 of the Rehabilitation

26          Act and the Americans with Disabilities Act."  (*Id.* at ¶ 25.)

27

28

b.    "[R]ecovery of compensatory damages are not available under 42 U.S.C. § 1983 to the extent a claim is premised on a violation of the IDEA." (*Id.* at ¶ 43.)

c.    "[T]he comprehensive enforcement scheme of the IDEA precludes a 42 U.S.C. § 1983 claim for violation of rights under the IDEA." (*Id.* at ¶ 46.)

d.    "Plaintiffs do not have a protected property or due process interest that Defendants have violated." (*Id.* at ¶ 48.)

e.    "Defendants have not failed to protect CP Parenteau from harassment, discrimination or a hostile environment predicated on the student's disability such that Plaintiffs may recover under Section 504 of the Rehabilitation Act or the Americans with Disabilities Act." (*Id.* at ¶ 49.)

f.    "Defendants have not failed to provide CP Parenteau with education aides and services designed to meet the individual needs of handicapped persons as adequately as the needs of non-handicapped persons such that Plaintiffs may recover under Section 504 of the Rehabilitation Act or the Americans with Disabilities Act." (*Id.* at ¶ 50.)

g.    "Defendants have not excluded CP Parenteau from participation in, or denied the benefits of, or have subjected CP Parenteau to discrimination as related to education services provided by the District such that Plaintiffs may recover under Section 504 of the Rehabilitation Act or the Americans with Disabilities Act." (*Id.* at ¶ 51.)

h.    "Defendants have not denied CP Parenteau educational services or benefits solely because of disability such that Plaintiffs may recover under Section 504 of the Rehabilitation Act or the Americans with Disabilities Act." (*Id.* at ¶ 52.)

I.    "Defendants have not engaged in conduct constituting intentional discrimination or deliberate indifference, thus precluding recovery under

Section 504 of the Rehabilitation Act and the Americans with Disabilities Act." (*Id.* at ¶ 58.)

j.   "Plaintiffs have not suffered any actual harm, thereby subjecting Plaintiffs' claims to dismissal." (*Id.* at ¶ 61.)

On February 5, 2008, the Court ordered the parties to "provide initial disclosures at least 21 calendar days before the case management conference in the form required by Federal Rule of Procedure 26(a)(1)." (Doc. #18.)  On March 20, 2008, Plaintiffs filed notice that they had served their initial disclosure statement on Defendants.  (Doc. #20.)

On April 4, 2008, the parties filed their joint Proposed Rule 26(f) Case Management Report.  (Doc. #25.)  In Plaintiffs' description of the nature of the case, Plaintiffs described their appeal of the administrative decision regarding their IDEA claim and summarily mentioned "other federal causes of action including 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 121361 *et seq.* [sic] and § 504 of the Rehabilitation Act, 29 U.S.C. § 794." (*Id.*)  Plaintiffs identified thirteen issues, ten of which relate to their IDEA claim.  (*Id.*)  Plaintiffs stated the final three issues as:

> 11.   Whether any violations of known laws constitute violations of § 1983 in that they involve the Constitution or Statute [sic] of the United States, whose violation has caused damage and harm to Plaintiffs.
> 12.   Whether Defendants have violated Plaintiffs' rights under 42 U.S.C. § 1983 and the ADA.
> 13.   Whether Defendants violated Plaintiffs' due process rights affecting CP's right to an education.

(*Id.*)  Defendants stated they did not anticipate further amendments to the pleadings or addition of parties; Plaintiffs did not say anything.  Defendants described what they anticipated as necessary discovery; Plaintiffs did not.

Regarding a request for jury trial, Plaintiffs said only that they had requested a jury trial.  Defendants said they requested a jury trial on Plaintiffs' 42 U.S.C. § 1983, ADA, and Section 504 (Rehabilitation Act) claims, but not on Plaintiffs' IDEA claim, which was an administrative appeal that could only be decided by a judge.  (*Id.*)

On April 11, 2008, the Court held a Rule 16 scheduling conference with the parties' counsel.  (Doc. #26.)  The Court confirmed that no one contemplated any

1    amended pleadings, and Plaintiffs' counsel agreed.  The Court said it would set May 9,

2    2008, as a deadline for amending pleadings, and there was no objection.  The Court

3    questioned counsel regarding anticipated discovery, and Plaintiffs' counsel said there

4    could be a need for some discovery, but it would be limited.  The discussion regarding

5    amending pleadings and anticipated discovery did not distinguish between the IDEA

6    claim and the claims to be tried to a jury.

7          Then the Court asked how the parties anticipated handling the overlap between

8    issues to be decided by judicial review and those to be decided by a jury.  Plaintiffs'

9    counsel said the entirety of the underlying disputed facts would be the same for the IDEA

10   issues and the jury issues, only the inquiry would be different.  Plaintiffs' counsel did not

11   dispute that the IDEA claim must be decided by a judge, not a jury.  The Court

12   questioned both counsel regarding the most efficient way to process the case, whether

13   they anticipated some issues being decided by summary judgment, and whether it would

14   make sense to complete the judicial review of the IDEA claim while developing the rest

15   of the case for summary judgment or jury trial.  Plaintiffs' counsel said he liked the notion

16   of addressing the IDEA claim first because it was the dominant part of the lawsuit.  The

17   Court said doing so would seem to have benefit if the IDEA claim could be addressed

18   quickly without holding back the other parts of the case and if it would help parties focus

19   on what matters.  The Court expressly stated it did not want people to be repeating work

20   at different times.  The Court and counsel then discussed and set deadlines related to

21   processing the IDEA claim.  The Court indicated it anticipated issuing a decision on the

22   IDEA claim by December 2008, at which point they would need to come back and

23   determine a schedule for processing the remaining claims, if they were not settled.  At

24   different times during the scheduling conference, each counsel indicated that the other

25   claims may not remain after the IDEA claim was decided.

26         On November 18 and 19, 2008, a bench trial was held on Plaintiffs' IDEA claim.

27   On December 11, 2008, the Court made findings of fact and conclusions of law and

28   denied Plaintiffs' appeal under the IDEA.  (Doc. #80.)  The Court ruled that IDEA's two-

1  year limitation period applied, the administrative law judge correctly determined that

2  exceptions to the limitation period do not apply, and the administrative law judge

3  properly limited Plaintiffs' IDEA claim to events after November 27, 2004.  Because the

4  Court found no IDEA violation in 2003-04, applying the two-year limitation period did

5  not affect determination of the IDEA claim.

6        The Court found, by a preponderance of the evidence, that Cody's IEPs for the

7  2003-04, 2004-05, and 2005-06 school years were reasonably calculated to provide

8  meaningful educational benefit, and the District did not fail to provide Cody a free

9  appropriate public education as required by the IDEA.  (*Id.*)  Among other things, the

10  Court found that the District used instructional and behavioral methods and strategies to

11  educate Cody that were generally accepted for the education of autistic children and

12  derived from educational theory and research; Cody's 2003, 2004, and 2005 IEP goals

13  and objectives were based upon assessment data, were individualized for Cody's needs,

14  and were calculated to enable Cody to make educational progress; and Cody made

15  meaningful progress toward each of his annual goals and objectives identified in his 2003,

16  2004, and 2005 IEPs.  (*Id.*)  The Court further found that the District provided Cody with

17  qualified special education teachers, qualified paraprofessionals, a qualified

18  speech/language therapist, and a qualified occupational therapist.  The Court also found

19  that the Plaintiffs incurred no out-of-pocket costs for education-related services for Cody

20  from August 2003 through November 2006.  (*Id.*)

21        In its December 11, 2008 Order, the Court also explained:

22        Although the IDEA does not restrict rights and remedies independently
           available through other sources of law, "where the underlying claim is one
23        of violation of the IDEA, plaintiffs may not use § 1983–or any other federal
           statute for that matter–in an attempt to evade the limited remedial structure
24        of the IDEA."  *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir.
           2006).  During trial on Count One, Plaintiffs conceded they must withdraw
25        at least one of their claims.
                 The Complaint does not allege facts beyond the bare minimum to
26        support the IDEA claim, and the Court has determined that the District
           provided Cody with a free appropriate public education and has not violated
27        the IDEA.  The rest of the Complaint does not appear to state a claim upon
           which relief can be granted on any legal basis.  Therefore, the Plaintiffs will

28

be ordered to show cause why the rest of the Complaint should not be dismissed for failure to state a claim.

(*Id.*)  The Court therefore ordered that Plaintiffs show cause why the remainder of the Complaint beyond Count One (Violation of IDEA) should not be dismissed with prejudice for failure to state a claim upon which relief can be granted.  (*Id.*)  On December 24, 2008, Plaintiffs filed their response to the Order and moved for leave to amend their Complaint.  (Doc. #81.)

## II.  Substantive Law

### A.  Title II of the Americans with Disabilities Act ("ADA")

Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  In Title II, "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids or services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

To prove a discrimination claim under § 12132, a plaintiff must show:

(1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination was by reason of his disability.*

*Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

### B.  Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act provides in part:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States postal service.

- 7 -

1   29 U.S.C. § 794(a).  For purposes of this section, the term "program or activity" means all

2   the operations of a local educational agency.  29 U.S.C. § 794(b)(2)(B).

3          United States Department of Education regulations interpreting Section 504

4   require recipients of federal funds to "provide a free appropriate public education to each

5   qualified handicapped person" and define "provision of an appropriate education" as:

6          the provision of regular or special education and related aids and services
       that (I) are designed to meet individual educational needs of handicapped
7          persons as adequately as the needs of nonhandicapped persons are met and
       (ii) are based upon adherence to procedures that satisfy the requirements of
8          §§ 104.34, 104.35, and 104.36.

9   34 C.F.R. § 104.33(a), (b)(1).  A recipient of federal funds must "place a handicapped

10  person in the regular educational environment [] unless it is demonstrated by the recipient

11  that the education of the person in the regular environment with the use of supplementary

12  aids and services cannot be achieved satisfactorily."  34 C.F.R. § 104.34(a).  Further, a

13  recipient must ensure that handicapped persons participate with nonhandicapped persons

14  in nonacademic and extracurricular services and activities, including meals, recess

15  periods, physical recreational athletics, and others, "to the maximum extent appropriate to

16  the needs of the handicapped person in question."  34 C.F.R. § 104.34(b).  If a recipient

17  operates a facility that is identifiable as being for handicapped persons, the recipient must

18  "ensure that the facility and the services and activities provided therein are comparable to

19  the other facilities, services, and activities of the recipient."  34 C.F.R. § 104.34(c).

20         To prove a discrimination claim under Section 504 of the Rehabilitation Act, a

21  plaintiff must show:

22         (1) he is an "individual with a disability"; (2) he is "otherwise qualified" to
       receive the benefit; (3) he was denied the benefits of the program *solely by
23         reason of his disability*; and (4) the program receives federal financial
       assistance.

24  *Weinreich*, 114 F.3d at 978 (footnote omitted).  There is no individual liability for

25  damages under Title II of the ADA or § 504 of the Rehabilitation Act.  *S.W. by J.W. v.

26  Warren*, 528 F. Supp. 2d 282, 298 (S.D.N.Y. 2007).

27

28

1   There is no significant difference in the analysis of rights and obligations created

2   by the ADA and § 504 of the Rehabilitation Act.  *Vinson v. Thomas*, 288 F.3d 1145, 1152

3   n.7 (9th Cir. 2002); *accord McGary v. City of Portland*, 386 F.3d 1259, 1269 n.7 (9th Cir.

4   2004).   Title II of the ADA expressly provides that the remedies, procedures, and rights

5   set forth in 29 U.S.C. § 794(a) shall be the remedies, procedures, and rights Title II

6   provides to any person alleging discrimination on the basis of disability in violation of 42

7   U.S.C. § 12132.

8   **C.      42 U.S.C. § 1983**

9   Section 1983 provides a remedy for the deprivation of any rights, privileges, or

10   immunities secured by the United States Constitution or a federal statute where the

11   deprivation was committed under color of state law.  *Smith v. Barton*, 914 F.2d 1330,

12   1333 (9th Cir. 1990).  A § 1983 claim based solely on violation of a federal statute,

13   however, does not lie where Congress has foreclosed a § 1983 remedy through a

14   sufficiently comprehensive remedial and enforcement apparatus in the underlying federal

15   statute.  *Id.* at 1333-34.  Although the IDEA does not restrict rights and remedies

16   independently available through other sources of law, "where the underlying claim is one

17   of violation of the IDEA, plaintiffs may not use § 1983—or any other federal statute for

18   that matter—in an attempt to evade the limited remedial structure of the IDEA."  *Diaz-*

19   *Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006).

20   **III.   Order to Show Cause**

21   **A.      Legal Standard**

22   To avoid dismissal for failure to state a claim upon which relief can be granted, a

23   plaintiff must allege facts sufficient "to raise a right to relief above the speculative level,

24   on the assumption that all the allegations in the complaint are true (even if doubtful in

25   fact)."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations and footnote

26   omitted).  A plaintiff is required to plead "only enough facts to state a claim to relief that

27   is plausible on its face," but "a plaintiff's obligation to provide the 'grounds' of his

28

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65, 1974.

**B.    Plaintiffs' Current Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

In their response to the Court's order to show cause, Plaintiffs state that "other Counts were set forth," but they do not argue that the Complaint alleged facts sufficient to state a claim upon which relief can be granted.  They contend only that they should be permitted to amend their Complaint and that it would have been inappropriate for them to seek to amend the Complaint during the period  in which the parties focused on their IDEA count.  Plaintiffs, therefore, concede that the Complaint fails to state a claim upon which relief can be granted under the ADA, § 504 of the Rehabilitation Act, 42 U.S.C. § 1983, or state or federal constitutional due process provisions.

Moreover, the Complaint, in fact, fails to state a claim upon which relief can be granted.  It does not allege discrimination on the basis of disability, exclusion from participation or denial of benefits by reason of disability, or any facts that would support claims of discrimination, exclusion from participation, or denial of benefits by reason of disability.  Nor does it allege any injury or damages caused by any violations of the ADA, § 504 of the Rehabilitation Act, 42 U.S.C. § 1983, or state or federal constitutional due process provisions.  The Complaint not only fails to allege enough facts to state a claim to relief that is plausible on its face, it fails to allege any material facts.  *See Twombly*, 127 S. Ct. at 1964-65.

**IV.    Plaintiffs' Motion to Amend the Complaint**

**A.    Legal Standard**

Leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v. Kayport Package*

1   *Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182

2   (1962)).  The district court's discretion to deny leave to amend a complaint is "especially

3   broad" where the plaintiff already has had one or more opportunities to amend his

4   complaint.  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989).

5   "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."

6   *Moore*, 885 F.2d at 538.

7            **B.      Bifurcation of the IDEA Bench Trial and the Jury Trial Claims Did
                       Not Prevent Plaintiffs from Timely Amending Their Complaint.**

8            Plaintiffs' only argument in support of their motion to amend their Complaint is

9   that it would have been inappropriate for Plaintiffs to seek to amend the Complaint during

10  the time the parties were processing the IDEA claim.  Plaintiffs' counsel's recollection of

11  the April 11, 2008 scheduling conference, without the benefit of a certified transcript, is

12  incorrect, however, and the reasoning therefrom is faulty.

13           First, Plaintiffs had adequate opportunity to amend their Complaint before the

14  April 11, 2008 scheduling conference and notice that they should do so.  Defendants'

15  Answer filed January 31, 2008, identified elements of the ADA, § 504 of the

16  Rehabilitation Act, and § 1983 claims that Plaintiffs had failed to allege.  But Plaintiffs

17  did not seek leave to amend their Complaint.  Then, on March 20, 2008, when Plaintiffs

18  served their initial disclosure statement, they were required to have disclosed all of the

19  documents that they may use to support *all* of their claims, a computation of each

20  category of damages they claimed, and the documents or other evidentiary material on

21  which each computation is based, including materials bearing on the nature and extent of

22  injuries suffered.  *See* Fed. R. Civ. P. 26(a).  Plaintiffs still did not seek leave to amend

23  their Complaint.  Then, on April 4, 2008, the parties submitted their jointly proposed

24  scheduling memorandum.  If, as Plaintiffs state, they addressed all claims simultaneously

25  in their jointly proposed scheduling memorandum, Plaintiffs should have included a

26  description of their allegations of discrimination and denial of benefits in violation of

27  § 1983, ADA, and § 504 of the Rehabilitation Act if they had such allegations, or any

28

1    allegations, independent from their IDEA claim.  During the April 11, 2008 scheduling

2    conference—before any discussion of bifurcating the IDEA claim and the jury trial

3    claims—Plaintiffs' counsel said they did not contemplate any amended pleadings and

4    needed only limited discovery to supplement the administrative record.  Even then, the

5    Court set May 9, 2008, as the deadline to file amended pleadings, and Plaintiffs did not

6    file one.

7            Second, during the April 11, 2008 scheduling conference, the Court questioned

8    both counsel regarding the most efficient way to process the case and asked whether it

9    made sense to complete judicial review of the IDEA claim expeditiously without delaying

10   other parts of the case.  The Court did not suggest an approach different from what the

11   parties wanted.  In fact, Plaintiffs' counsel said he liked the notion of addressing the

12   IDEA claim first because it was the dominant part of the lawsuit.

13           Plaintiffs had ample opportunity to amend their Complaint before May 9, 2008.

14   Their delay is not excused by the plan to try the IDEA claim first, to which Plaintiffs'

15   counsel expressly agreed and which developed after Plaintiffs should have been aware

16   that their Complaint was inadequate.

17       **C.    Plaintiffs' Motion to Amend the Complaint Is Futile.**

18           Plaintiffs' proposed First Amended Complaint includes the following general

19   allegations:

20       a.    "Defendant Prescott denied a FAPE [free appropriate public education] to

21             CJP under § 504 in that comparable resources, facilities, and opportunities

22             provided to regular educational students were denied CJP."  (Doc. #81-2,

23             ¶ 1.)

24       b.    "Prescott did not have any program for the 2005-06 or 2006-07 school years

25             designed specifically to educate autistic children."  (*Id.* at ¶ 5.)

26       c.    "Plaintiff CJP did not have a program designed to meet his educational

27             needs comparable to what regular education students were given.  There

28             was no systematic curriculum provided designed to focus on his acquisition

of primary skills that would allow for building upon acquired skills to progress to acquire more complex educational skills." (*Id.* at ¶ 6.)

d.    "The programs designed and implemented for CJP were not designed to allow him the benefit of statewide standards available to regular education students and they were based solely upon the convenience and individual preferences of the staff.  The program designed for CJP failed to include objective measures of his current levels of academic functioning as were provided to regular education students." (*Id.* at ¶ 8.)

e.    "CJP attended classes in a special education resource room where CJP was not allowed to receive instruction above a whisper; CJP and his instructional aide(s) had no access to classroom computers; CJP and his instructional aide(s) were not provided access to supplies or instructional items, and [CJP] was routinely forced to be with his aide in the hallway or a converted janitor's closet." (*Id.* at ¶ 11.)

f.    "Prescott intentionally failed to design and implement an education program for CJP to meet his educational needs. . . .  In violation of 34 CFR § 104.33(b)(1), Prescott officials failed to implement and design programs comparable for autistic children to regular education children." (*Id.* at ¶ 12.)

g.    "In August of 2007, CJP was not permitted to attend school with other children and was denied access to any education for three weeks and was then only allowed limited access at the convenience of the regular education teachers." (*Id.* at ¶ 13.)

h.    "The District, during the years 2003 through 2008[,] engaged in baseless discriminatory segregation of disabled children, particularly autistic children.  School principals during this time were given full authority to and did deny access to comparable facilities and programs to autistic students and segregated them from regular education students." (*Id.* at ¶ 15.)

1    I.    "Prescott School District officials intentionally denied and/or were

2          deliberately indifferent to the denial of educational access to CJP." (*Id.* at

3          ¶ 16.)

4    Specifically addressing their claim of violation of § 504 of the Rehabilitation Act,

5    Plaintiffs allege that Cody was denied:

6        a.    "access to recess, lunch, and physical education services at the same time

7              and location, and in the presence of regular education students" (*id.* at ¶ 20);

8        b.    "opportunity to participate and have access to the general education

9              curriculum and other benefits" (*id.* at ¶ 17);

10       c.    "opportunities to attend school and/or classes afforded same age non-

11             handicapped students" (*id.*);

12       d.    "the benefit of access to a regular education environment" (*id.* at ¶ 21); and

13       e.    "access to facilities comparable to non-handicapped students" (*id.*).

14   In addition, Plaintiffs allege that "the class and campus location during 2003-06 was

15   changed several times unilaterally without IEP team meetings or input from parents and

16   special educators." (*Id.* at ¶ 21.)  Plaintiffs further allege that the District's deliberate

17   indifference was demonstrated by "the grossly overcrowded classrooms to which CJP

18   was assigned with insufficient staffing and resources to all for meaningful educational

19   benefit" and that Cody's "cross-categorical class during this period contained between 15

20   to 18 students, one certified teacher who was not a specialist in autism and one aide." (*Id.*

21   at ¶ 22.)  As violations of § 504, Plaintiffs allege the "District failed to provide an

22   education to CJP to meet his educational needs in the same fashion as non-handicapped

23   students, [] failed to adhere to procedures that considered placement or access to a regular

24   education environment with supplementary aides and services," failed "to ensure, absent

25   such access or placement, that the facilities were comparable," and "failed to design an

26   education program designed to allow CJP the opportunity to develop independent living

27   and vocational skills." (*Id.* at ¶¶ 23-24.)

28

To support their claim the District violated "the Due Process clause of the United States and State Constitutions" and denied "property and liberty interests in a free public education," Plaintiffs allege only the following:

> 26.    Defendant Prescott Unified School District has suspended services, denied educational services, and provided services at such an inadequate level as to deprive Plaintiffs the right to due process and an education by changing the placement, location of classes, predetermination of placement, and segregation of handicapped children in violation of his due process and constitutional right to an education[.]

(*Id.* at ¶ 26.)

The proposed First Amended Complaint includes only one allegation specifically related to the final count, which is titled "42 U.S.C. § 1983, Americans With Disabilities Act (ADA)."  It states:  "Defendants' actions as set forth above have also violated Plaintiff's rights under 42 U.S.C. § 1983 and the ADA."  (*Id.* at ¶ 29.)

**1.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Proposed Amended ADA, § 504, and Constitutional Claims Because Plaintiffs Have Not Exhausted Their Administrative Remedies.**

Federal courts do not have jurisdiction to hear a plaintiff's claim if a plaintiff is required to exhaust administrative remedies and fails to do so.  *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920-21 (9th Cir. 2005).  Exhaustion of IDEA administrative remedies is required when a plaintiff seeks relief that is also available under the IDEA.  *Id.* at 921; 20 U.S.C. § 1415(l).  "[T]he exhaustion requirement embodies the notion that educational agencies, not the courts, ought to have primary responsibility for the educational programs that Congress has charged them to administer."  *Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1051 (9th Cir. 2002).  Further:

> The IDEA's exhaustion requirement recognizes the traditionally strong state and local interest in education, allows for the exercise of discretion and educational expertise by state agencies, affords full exploration of technical educational issues, furthers development of a factual record and promotes judicial efficiency by giving state and local agencies the first opportunity to correct shortcomings.

*Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1167 (9th Cir. 2007).

1    Plaintiffs cannot avoid the IDEA's exhaustion requirement merely by limiting a

2 prayer for relief to money damages. *Robb*, 308 F.3d at 1049. "Relief is available under

3 the IDEA when 'both the genesis and the manifestations of the problem are educational.'"

4 *Blanchard*, 420 F.3d at 921. Relief that is "also available" under the IDEA "may not

5 always be relief in the precise form the plaintiff prefers":

6         Our primary concern in determining whether a plaintiff must use the
          IDEA's administrative procedures relates to the source and the nature of the
7         alleged injuries for which he or she seeks a remedy, not the specific remedy
          requested. The dispositive question generally is whether the plaintiff has
8         alleged injuries that could be redressed to any degree by the IDEA's
          administrative procedures and remedies. If so, exhaustion of those
9         remedies is required. If not, the claim necessarily falls outside the IDEA's
          scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy
10        a particular injury is unclear, exhaustion should be required to give
          educational agencies an initial opportunity to ascertain and alleviate the
11        problem.

12 *Robb*, 308 F.3d at 1049-50. Moreover, Plaintiffs bear the burden of proving they need

13 not exhaust administrative remedies because IDEA procedures are futile or inadequate.

14 *Id.* at 1050 n.2.

15    Here, the prayer for relief in the proposed First Amended Complaint seeks

16 compensatory damages, punitive and exemplary damages, costs, and attorneys' fees.

17 Plaintiffs claim to have suffered "great financial, emotional, and other damages" without

18 further elaboration. Their injuries alleged in the proposed First Amended Complaint

19 essentially are that, during some undefined periods of time: (a) Cody was denied an

20 educational program comparable to what regular education students were provided; (b)

21 Cody's educational progress was not measured by regular education standards; (c) Cody

22 did not have access to classroom computers; (d) Cody received individual educational

23 services in a hallway, converted janitor's closet, or the back of a special education

24 resource room where the instructor spoke in a whisper to avoid disturbing the instruction

25 of other students; (e) Cody was not permitted to participate in recess, lunch, and physical

26 education services with regular education students; (f) Cody was denied access to

27 facilities comparable to non-handicapped students; and (g) Cody was denied opportunities

28 to attend school and/or classes provided to same age non-handicapped students.

1     The IDEA's administrative procedures include meetings of an IEP Team, which
2 consists of the student's parents, a special education teacher, a regular education teacher
3 (if appropriate), and a district representative who is knowledgeable about the school
4 district's programs, resources, and regular education curriculum.  20 U.S.C.
5 § 1414(d)(1)(B).  The IDEA requires the IEP Team to annually develop an IEP, which is
6 an Individualized Education Program, for each special education student.  The IEP must
7 include "a statement of the child's present levels of academic achievement and functional
8 performance"; "a statement of measurable annual goals, including academic and
9 functional goals, designed to . . . enable the child to be involved in and make progress in
10 the general education curriculum"; "a description of how the child's progress . . . will be
11 measured" and when it will be reported; "a statement of the special education and related
12 services and supplementary aids and services, based on peer-reviewed research to the
13 extent practicable, to be provided to the child"; "an explanation of the extent, if any, to
14 which the child will not participate with nondisabled children in the regular class"; "a
15 statement of any individual appropriate accommodations that are necessary to measure
16 the academic achievement and functional performance of the child on State and
17 districtwide assessments"; and "the projected date for the beginning of the services and
18 modifications . . . and the anticipated frequency, location, and duration of those services
19 and modifications."  20 U.S.C. § 1414(d)(1)(A)(I).
20     The IDEA's remedies include procedures for parents and schools to resolve
21 disputes regarding the provision of educational services to children with disabilities,
22 including opportunity to serve a due process complaint and request an impartial due
23 process hearing.  20 U.S.C. § 1415(f).  Under the IDEA, any party aggrieved by the
24 findings and decision rendered in an administrative hearing conducted pursuant to
25 20 U.S.C. § 1415(f) has the right to bring a civil action for judicial review.  20 U.S.C.
26 § 1415(i)(2)(A).
27     All of Plaintiffs' alleged injuries could have been redressed to some degree by the
28 IDEA's administrative procedures and remedies.  Each year, Plaintiffs participated in IEP

1    Team meetings and gave written consent to Cody's IEP.  Plaintiffs met at least annually,

2    and more often upon request, with the IEP Team.  They had opportunity to question and

3    dispute whether the services, resources, and facilities provided to Cody were comparable

4    to those provided to regular education students.  If Plaintiffs had any concerns regarding

5    Cody's access to classroom computers, the extent of his participation in lunch, recess, or

6    physical education with regular education students, and/or how Cody's educational

7    program, curriculum, and progress compared to that of regular education students,

8    Plaintiffs could have—and should have—raised those concerns at a time when the

9    District could have done something about them that would have made a difference to

10   Cody.  *See, e.g.*, *Kutasi*, 494 F.3d at 1169 (district's alleged refusal to allow disabled

11   student to attend school was "precisely the kind of educational injury that we expect

12   plaintiffs to adjudicate at the administrative stage before seeking relief from a court of

13   law").

14          Further, Plaintiffs were knowledgeable about the IDEA dispute resolution

15   procedures.  In fact, they filed five separate due process hearing requests.  And they

16   settled one or more of those due process complaints with the District.  As a result, the

17   District provided Cody with additional aides and hired the autism experts Plaintiffs

18   wanted to provide Cody the educational programs Plaintiffs wanted.  Plaintiffs indicated

19   that beginning with the 2006-07 school year, they were extremely satisfied with the

20   programs and services the District provided to Cody.  Remedies under the IDEA would

21   have been adequate to provide comparable facilities, appropriate curriculum, assessment

22   relative to regular education standards, and participation in lunch, recess, and physical

23   education with regular education students if Plaintiffs had raised any of those issues

24   during IDEA administrative proceedings.

25          Plaintiffs rely heavily, if not entirely, on *Mark H. v. Lemahieu*, 513 F.3d 922 (9th

26   Cir. 2008), which provides a thorough discussion of the differences between "free

27   appropriate public education" under the IDEA and § 504 and held that the availability of

28   relief under the IDEA does not limit the availability of a damages remedy under § 504 for

failure to provide the free appropriate public education required by § 504 and its implementing regulations.  However, *Mark H.* did not reach the issue of exhaustion because, in that case, the plaintiffs had exhausted the IDEA remedies.  *Id.* at 935.

Although *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271 (9th Cir. 1999), held that a disabled student was not required to exhaust his IDEA administrative remedies before seeking monetary damages under the ADA and § 504, the disabled student in that case alleged injuries that were not educational in nature.  In *Witte*, a student with Tourette's Syndrome, asthma, attention deficit hyperactivity disorder, and emotional problems alleged physical, psychological, and verbal abuse.  *Id.* at 1272-73.  He alleged that, although they were aware he was allergic to oatmeal, a teacher and instructional assistant forcibly fed him oatmeal mixed with his own vomit, while holding his hands behind his back.  *Id.* at 1273.  He further alleged that when his mother complained, the school principal told his mother that she knew that staff force-fed oatmeal to students as a form of punishment.  The student further alleged that the instructional assistant, under the teacher's direction, choked him in an attempt to make the student run faster even though he kept falling down because of deformed feet and legs.  *Id.* He alleged additional multiple forms of physical punishment, physical injuries, and specific emotional abuse for actions related to his disabilities, such as involuntary body movements or tics. Eventually, through the IEP process, the student was transferred to another school within the district, and the student was satisfied with the new placement and services provided. *Id.* at 1273-74.  It can be inferred that the student and his mother gave the school district notice through the IEP process of the physical and emotional abuse inflicted on the student by school employees.  In federal court, the student sought only monetary retrospective relief, both compensatory and punitive, because all of the educational issues had been resolved through the IEP process and the IDEA administrative proceedings did not adequately address past physical injuries.  *Id.* at 1275-76.  In *Witte*, unlike here, the ADA and § 504 claims were based on injuries that were not educational in nature, likely

1   were raised during the IDEA administrative proceedings, and were not able to be resolved

2   during the administrative proceedings.

3        Because, here, all of the alleged violations of the ADA, § 504, and federal and

4   state constitutions are educational in nature—in fact, directly part of or integrated in

5   Cody's IEPs—and could have been redressed by IDEA administrative procedures and

6   remedies, Plaintiffs were required to exhaust their administrative remedies. They did not

7   raise any of the alleged ADA, § 504, or constitutional violations during administrative

8   proceedings where the violations could have been redressed to some degree even if

9   monetary damages could not have been awarded. (*See* Administrative Law Decision,

10  doc. #85-2.)  Exhaustion of administrative remedies would not have been futile.

11  Therefore, the Court lacks subject matter jurisdiction over Plaintiffs' proposed amended

12  ADA, § 504, and constitutional claims because Plaintiffs have not exhausted their

13  administrative remedies.

14              **2.      Plaintiffs' Proposed First Amended Complaint Fails to Allege**
                          **Injury or Damages Above the Speculative Level.**
15
        The proposed First Amended Complaint alleges:
16
            17.    As a result of all the above, the Parenteaus have suffered great
17      financial, emotional, and other damages, and as a result thereof have asked
        this Court to seek relief.  There is no administrative remedy available as
18      such would be futile under the facts and circumstances as the Parenteaus are
        seeking compensation for past failures to educate and admitted violations of
19      IDEA and other obligations under State and Federal law.

20  (Doc. #81-2, ¶ 17.)  During the evidentiary hearing on their IDEA claim, Plaintiffs sought

21  monetary compensation to pay for programs, services, and products to make up for

22  educational services and opportunities that they contended Cody should have, but did not,

23  receive during the 2003-04, 2004-05, and 2005-06 school years.  However, Plaintiffs

24  conceded they had not incurred any actual expenses in providing compensatory education

25  for Cody during those years and they were extremely satisfied with what the District has

26  provided following those years.  Therefore, allegations of "great financial" damages

27  conflicts with Plaintiffs' previous testimony.  Further, the proposed First Amended

28  Complaint does not specify which Plaintiff is alleged to have suffered emotional and

1   "other damages" or how the alleged statutory and constitutional violations caused

2   emotional and "other damages."  Moreover, beyond bare accusations of intentional

3   discrimination and deliberate indifference, the proposed First Amended Complaint does

4   not allege facts upon which damages can be awarded.

5      Because "a formulaic recitation of the elements of a cause of action" is not

6   sufficient to state a claim upon which relief can be granted and the proposed First

7   Amended Complaint does not allege damage or injury "above the speculative level," the

8   proposed First Amended Complaint fails to state a claim upon which relief can be

9   granted.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also*

10  *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007) (although parent had

11  standing to bring claims under § 504 of the Rehabilitation Act and title II of the ADA, at

12  least insofar as she was asserting and enforcing rights of her son and incurring expenses

13  for his benefit, her claims were properly dismissed because she was not entitled to the

14  damages she sought).

15     Therefore, amending the Complaint as Plaintiffs propose would be futile, and the

16  Court will deny Plaintiffs' motion to amend the Complaint.

17    **D.**  **Permitting Plaintiffs to File Their Proposed First Amended Complaint**
        **Would Cause Undue Prejudice to Defendants.**

18

19     Plaintiffs' proposed First Amended Complaint relies entirely on allegations

20  regarding educational programs, resources, curricula, facilities, and opportunities that

21  Defendants allegedly did or did not provide for Cody.  Evidence to establish or refute

22  these allegations likely would be provided by the same witnesses and experts who

23  previously were deposed and/or who testified at the trial on the IDEA claim, but they

24  would need to be deposed again to investigate Plaintiffs' new allegations.  Defendants

25  would be unduly prejudiced by the additional time and expense required for a second

26  round of discovery and also by receiving first notice of discrimination many years after it

27  allegedly occurred.

28

1          **E.     No Further Leave to Amend Will Be Granted.**

2          Plaintiffs' motion for leave to amend did not request leave to submit another

3    proposed amended complaint if their proposed First Amended Complaint failed to state a

4    claim.  Further, the Court has found undue delay, undue prejudice to Defendants, and

5    futility regarding Plaintiffs' proposed First Amended Complaint, which fails to state a

6    claim.  Plaintiffs are not entitled to extend this litigation – and impose further unjustified

7    expense on Defendants – while they try to identify new factual allegations for their

8    claims.  Moreover, it is unlikely Plaintiffs could allege any violations of the ADA or

9    § 504 of the Rehabilitation Act that are not educational in nature and therefore not barred

10   for failure to exhaust administrative remedies, do not conflict with evidence previously

11   offered by Plaintiffs (*e.g.*, their satisfaction with services provided by the District to Cody

12   after the 2005-06 school year), and are not barred by the statute of limitations because

13   non-educational claims arising out of events not previously pled (or disclosed) might not

14   relate back to the date the Complaint was filed.  *See* Fed. R. Civ. P. 15(c).  Therefore,

15   Plaintiffs would not be entitled to leave to propose another amended complaint even if

16   they had asked for it.  *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161

17   (9th Cir. 1989); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

18   **V.     Conclusion**

19         Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

20   Plaintiffs' motion for leave to amend their Complaint is unduly delayed and prejudicial,

21   and granting it would be futile because the proposed First Amended Complaint also fails

22   to state a claim upon which relief can be granted.  Therefore, the Motion to Amend

23   Complaint will be denied with prejudice, and this action will be terminated.

24         IT IS THEREFORE ORDERED that the claims in Plaintiffs' Complaint (doc. #1)

25   that were not directly adjudicated in the order of December 11, 2008 (doc. # 80), are

26   dismissed with prejudice for failure to state a claim upon which relief can be granted.

27         IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend Complaint (doc.

28   #81) is denied.

1    IT IS FURTHER ORDERED that the Clerk enter judgment (1) on Count One of

2    the Complaint under the IDEA affirming the Administrative Law Judge Decision dated

3    May 14, 2007, in No. 07C-DP-07019-ADE, and (2) dismissing with prejudice the

4    remaining claims in this action. The Clerk is directed to terminate this action.

5    DATED this 3rd day of March, 2009.

6

7

8

9

10    _____

11    Neil V. Wake
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -