**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Parenteau and Jolene Parenteau,) husband and wife, and Raymond and) Jolene Parenteau on behalf of their minor) son, CP, ) ) | No. CV 07-8072-PCT-NVW |
| Plaintiffs, ) ) | **ORDER** |
| vs. ) ) ) | |
| Prescott Unified School District, an) Arizona school district; Kevin J. Kapp,) Superintendent, Prescott Unified School) District; John Does I-V; Jane Does I-V;) and Black and White Corporations I-X, ) ) | |
| Defendants. ) ) ) | |

Before the Court is Defendants' Motion for Award of Attorneys' Fees and Related Non-taxable Expenses (doc. #93). Plaintiffs object to the award of any legal fees or costs to Defendants for the reasons that (1) Defendants' fees and costs were paid for by their insurer under a contract of insurance, and (2) Plaintiffs' claims were not frivolous or brought in bad faith. (Doc. #104.) Plaintiffs also request their reasonable attorneys' fees in opposing Defendants' Motion.

**I.     Background**

In June 1998, Ray and Jolene Parenteau adopted Cody at birth. He was diagnosed as autistic and enrolled in a full-day preschool autism program in California shortly

1   before his third birthday.  In August 2003, the Parenteaus enrolled Cody in the Prescott

2   Unified School District ("District") although the Parenteaus never have lived within the

3   District's boundaries.

4          When Cody began school in the District, he was significantly delayed in speech

5   and language, social interaction, and general knowledge.  Although he was five years old,

6   he could not drink from a cup and was not toilet trained.  He did not play with other

7   children and needed an adult to direct him through play activities.  He ran from adults and

8   showed no signs of fear in unsafe situations.  Throughout the 2003-04, 2004-05, and

9   2005-06 school years, Cody was, at times, uncooperative with staff and his parents,

10  "flopping" on the floor instead of following directions, refusing to sit at a table, and

11  pinching, hitting, and spitting at staff.  He was not toilet trained until 2008.

12         At the beginning of the 2003-04 school year, the District provided services to

13  Cody as prescribed by the individualized education program ("IEP") developed by his

14  former school in California.  Cody was placed in a self-contained, cross-categorical

15  special education class.

16         For each of the 2003-04, 2004-05, and 2006-06 school years, Cody's IEP Team

17  met and developed a new IEP for the year.  In October 2003, Cody's IEP Team did not

18  include a regular education teacher because it was unlikely he would participate in a

19  regular education classroom except to attend story time in a regular kindergarten class,

20  accompanied by a special education paraprofessional.  In October 2004 and October

21  2005, Cody's IEP Team included a regular education teacher.  Each year, the Parenteaus

22  participated in the IEP planning and signed the IEPs.  The Parenteaus did not object to the

23  composition of Cody's IEP Teams, his placement, his IEPs, or the instructional and

24  behavioral methods used to implement his IEPs.

25         All of the District teachers assigned to teach Cody during the 2003-04, 2004-05,

26  and 2005-06 school years held State of Arizona special education certification, and two of

27  the three also were certified in cross-categorical special education, which includes autism.

28  The District used multiple instructional and behavioral methods and strategies to educate

1    Cody, which included Discrete Trial Training, Applied Behavioral Analysis, visual

2    supports, the TEACCH model, one-on-one instruction, and extended-school-year summer

3    programs.  These methods and strategies are generally accepted for the education of

4    autistic children and derived from educational theory and research.  The District also

5    provided Cody with occupational therapy, speech/language therapy, adaptive physical

6    education, and paraprofessional services.

7         The Parenteaus incurred no out-of-pocket costs for education-related services for

8    Cody from August 2003 through November 2006.  The Parenteaus enrolled Cody in a

9    private program based on the Applied Behavioral Analysis method for the summer of

10   2005, and the District paid for it.  After two weeks, the Parenteaus withdrew Cody from

11   the program because Mr. Parenteau believed the staff working with Cody were

12   inadequately trained and because Cody disliked the program so much that he cried and

13   refused to get out of the car.  The District offered to send Cody to the same program for

14   the summer of 2006, but the Parenteaus declined the offer.

15        Each year, Cody made slow, but observable, progress in his speech, attention to

16   tasks, and ability to color and assemble puzzles.  He exceeded his expected progress, met

17   expected progress, or approached expected progress for each of his IEP goals in each of

18   the 2003-04, 2004-05, and 2005-06 school years.  There were no IEP goals in which

19   Cody made no progress or made less than expected progress.  Cody's IEP goals and

20   objectives were revised annually based on his educational progress.

21        In November 2003, five-year-old Cody's cognitive development was measured as

22   an age equivalent of forty months, his overall communication skills as fifteen months, and

23   his developmental age as twenty-two months.  Cody's behavioral functioning was

24   measured as below the first percentile with an age equivalent of fifteen months.  In

25   November 2006, the assessments showed eight-year-old Cody continued to be

26   significantly delayed in comparison to other eight-year-old children, and his behavioral

27   functioning score remained below the first percentile.  In other words, although Cody's

28   teachers observed improvement in Cody's skills and behavior over the three-year period,

1   his performance relative to the standard for children of the same chronological age

2   remained constant.

3           On November 27, 2006, Plaintiffs filed a Due Process Complaint, alleging that the

4   District had committed multiple procedural violations that denied Cody's right to a free

5   appropriate public education and caused a deprivation of Cody's educational rights.

6   During administrative proceedings, Plaintiffs requested that Cody be compensated by

7   approximately 1,800 hours of additional tutoring with a total cost of $73,500. Following

8   an administrative hearing on March 21, 2007, the administrative law judge ("ALJ")

9   determined that the two-year statutory limitation period for the Due Process Complaint

10  applied and therefore did not rule on any of Plaintiffs' allegations regarding the 2003-04

11  school year. The ALJ determined that the District's provision of special education

12  services to Cody under his 2004 and 2005 IEPs did not violate the IDEA. The ALJ's

13  findings were rendered in an eighteen-page decision on May 14, 2007.

14          During the 2006-07 school year, at the Parenteaus' request, the District began

15  paying two autism specialists to consult regarding Cody and to train paraprofessionals to

16  use Applied Behavioral Analysis methods with Cody. The District began providing one

17  paraprofessional to interact with Cody using Applied Behavioral Analysis methods and

18  one paraprofessional to collect data regarding Cody's behavior.  The District also

19  provided Cody with summer programs for the 2006-07 and 2007-08 school years,

20  including a personal paraprofessional aide for the programs. In 2007, the District also

21  provided Cody with home tutoring services.

22          On August 10, 2007, while Cody continued to receive the additional services and

23  specific programming they had requested, Plaintiffs sought review of the ALJ's decision

24  and initiated this action. They alleged, among other things, that the District had violated

25  the IDEA and they were "entitled to compensation for all reasonable and necessary

26  expenses including educational, medical and all other damages associated with the gross

27  failures to comply" with the IDEA. Plaintiffs, however, did not contend that they had

28  incurred any out-of-pocket costs for educational services for which they should be

reimbursed. They sought only monetary damages to pay for educational services for Cody that would compensate for services that they contended he should have received, but did not receive, during the 2003-04, 2004-05, and 2005-06 school years. However, Plaintiffs did not identify or offer evidence of any compensatory education services that would benefit Cody beyond that which he already was receiving.

Plaintiffs' Complaint identified four counts: (1) Violation of IDEA; (2) 42 U.S.C. § 1983 – Violation of IDEA and Section 504 of the Rehabilitation Act of 1973, as amended; (3) Violation of Due Process and Denial of Property and Liberty Interests in a Free Public Education; and (4) 42 U.S.C. § 1983, Americans with Disabilities Act (ADA). The Complaint alleged only the following facts in support of their claims:

–Defendants placed Plaintiffs' autistic son Cody in a cross-categorical program for the 2003-04 school year, and "[t]here was no autism program or qualified teachers who knew anything about the teaching of autistic students in the Prescott Unified School District, but the district provided extra compensatory education services to CP as a result of settlement of due process claims filed against the District."[1]

–In the cross-categorical program Cody "made no gains or received any meaningful educational progress."

–The District did not have an acceptable program for 2005 or 2006.

–The District began an autism program in 2006, but the teacher did not have proper certification and submitted false information on her employment application.

–Plaintiffs "have suffered great financial, emotional, and other distress."

–"There is no administrative remedy available as such would be futile under the facts and circumstances as the Parenteaus are seeking compensation for

---

[1]The Complaint also alleges, "Plaintiffs have filed 5 separate due process hearing requests as a result of Defendants' continued failure to provide CP a free appropriate education. . . ."

1    past failures to educate and admitted violations of IDEA and other

2    obligations under State and Federal law."

3    Plaintiffs alleged no facts to support claims under any federal law other than the IDEA.

4    Defendants' Answer identified forty-five affirmative defenses to Plaintiffs' claims,

5    including that Plaintiffs had failed to exhaust available administrative remedies for their

6    claims other than their IDEA claim and all of their claims were subject to dismissal

7    because they had not suffered any actual harm. Despite this warning, Plaintiffs did not

8    seek leave to amend their Complaint before the May 9, 2008 deadline to amend

9    pleadings.

10    On November 18 and 19, 2008, upon the parties' request, a bench trial was held on

11    Plaintiffs' IDEA claim before proceeding on their other claims, which Plaintiffs conceded

12    was dependent on their IDEA claim. On December 11, 2008, the Court issued findings of

13    fact and conclusions of law, which included the following:

14    –The District included all of the people the IDEA required to be on Cody's

15    IEP Team; the IDEA does not require the District to include an "autism

16    expert" on Cody's IEP Team, especially when the State of Arizona does not

17    certify autism experts.

18    –The District provided Cody with qualified special education teachers as

19    well as qualified paraprofessionals, a qualified speech/language therapist,

20    and a qualified occupational therapist.

21    –The District satisfied the IDEA's requirements for an initial evaluation and

22    reevaluation at least once every three years.

23    –The District satisfied the IDEA's requirements for developing and revising

24    Cody's IEPs with measurable annual goals, including academic and

25    functional goals.

26    –The District satisfied the IDEA's requirements for reviewing Cody's IEPs

27    periodically, but not less frequently than annually, to determine whether

28    Cody was achieving his annual goals and for revising the IEPs to address

- 6 -

1    any lack of expected progress, the results of any reevaluation, and Cody's

2    anticipated needs.

3    –Cody's records, based primarily on qualitative data, demonstrate that he

4    made slow, but significant educational progress during the 2003-04, 2004-

5    05, and 2005-06 school years.

6    –The District fully complied with the IDEA regarding Cody.

7    –Even if the District had violated the IDEA, Plaintiffs would not be entitled

8    to any remedy because the District currently is providing Cody all of the

9    services his parents have requested.  This includes providing (a) two

10    paraprofessionals for Cody, one to interact with him using Applied

11    Behavioral Analysis methods and one to collect data regarding Cody's

12    behavior; (b) training for the paraprofessionals and weekly consultations by

13    two autism experts; and (c) summer school programs for Cody.

14        At the beginning of the trial, Plaintiffs' counsel stated that the parties had resolved

15   any issues related to the 2006-07 school year by a memorandum of understanding.  He

16   also stated:  "And there is no issue regarding '07 - '08.  And in fact the Parenteaus are

17   ecstatic about the program and the progress that their child is making under his current

18   IEP."  When asked whether the program could be made better in any way, Plaintiffs'

19   counsel responded that it could be made better if the local staff were less dependent on

20   the outside consultants to resolve problems they observed.  He also stated he thought that

21   the local staff would become better able to make decisions independently and implement

22   them immediately as they became better trained.

23        At the beginning of the trial, Plaintiffs' position was that Cody should be provided

24   with compensatory education to make up for what was lost, possibly a fund based upon

25   the number of hours during which inadequate education was provided.  Near the end of

26   the trial, as an alternative to the $73,500 of additional tutoring sought as relief during

27   administrative proceedings, Plaintiffs sought a stay of court proceedings on their IDEA

28

1  claim and a remand to the ALJ for further evidentiary proceedings to determine what

2  compensatory education would be appropriate for Cody.

3  　　　　On December 11, 2008, when the Court issued its findings and conclusions, the

4  Court denied Plaintiffs' appeal from the ALJ's decision on their IDEA claim and ordered

5  them to show cause why the remaining claims should not be dismissed with prejudice for

6  failure to state a claim upon which relief can be granted.  On December 24, 2008, in

7  response to the order to show cause, Plaintiffs for the first time sought leave to amend

8  their Complaint.

9  　　　　On March 4, 2009, the Court ruled that Plaintiffs' Complaint failed to state a claim

10  upon which relief can be granted, Plaintiffs motion for leave to amend their Complaint

11  was unduly delayed and prejudicial, and granting leave to amend would be futile because

12  the proposed First Amended Complaint also failed to state a claim upon which relief can

13  be granted.  Plaintiffs' Motion to Amend Complaint was denied, judgment was entered

14  affirming the ALJ's decision under the IDEA, the remaining claims were dismissed with

15  prejudice, and the action was terminated.

16  **II.    Defendants Have Incurred Compensable Attorneys' Fees and Non-taxable
         Costs.**

17

18  　　　　Plaintiffs contend that Defendants are not entitled to a fee award because their

19  legal defense was provided by the District's insurer, the Arizona School Risk Retention

20  Trust, and not paid for directly by Defendants.  The District is a member of the Arizona

21  School Risk Retention Trust, which provides legal representation for its member school

22  districts.  The District must pay premiums to the Trust for the Trust to provide legal

23  services for the District.  In the event the District recovers fees and non-taxable expenses,

24  the District must reimburse the Trust for the cost of defending against this suit.

25  　　　　"[A]n individual may 'incur' fees even if those fees are paid initially by a third

26  party." *Morrison v. Comm'r of Internal Revenue*, 565 F.3d 658, 659 (9th Cir. 2009).  In

27  *Morrison*, the Ninth Circuit held that, where attorneys' fees were paid by a third party, a

28  taxpayer can "incur" attorneys' fees if he assumes either a noncontingent obligation to

1  repay the fees advanced on his behalf or a contingent obligation to repay the fees in the

2  event of their eventual recovery. *Id.* at 662, 666. *See also Leeds v. Watson*, 630 F.2d

3  674, 677 (9th Cir. 1980) (fact that § 1983 plaintiffs' counsel was a legal services

4  organization supported in part by public funds was irrelevant in determining whether

5  attorney fee award was proper).

6         The only authority Plaintiffs cite to support their position is *Bell v. Alamatt Motel*,

7  243 F. Supp 472 (D. Miss. 1965). In *Bell*, the district court ruled that civil rights

8  plaintiffs who obtained preliminary injunctive relief against racially discriminatory

9  practices by the owners and operators of a motel and restaurant were not entitled to

10 reimbursement of attorneys' fees under 42 U.S.C. § 2000-3 because the plaintiffs were

11 under no obligation to pay their counsel. The court reasoned that the purpose of a fee

12 award under the Civil Rights Act of 1964 was to reimburse the plaintiffs and make them

13 whole, but if they had neither paid nor incurred any obligation to pay counsel, there was

14 no need to make them whole. *Id.* at 475.

15        Here, the District pays an insurance premium for defense services and also has a

16 contingent obligation to repay legal expenses incurred on its behalf in the event of

17 recovery. *Bell*, therefore, is inapplicable, and Defendants have "incurred" compensable

18 legal expenses as defined by the Ninth Circuit.

19 **III.    Defendants Are the Prevailing Parties.**

20        Defendants successfully defended against all of Plaintiffs' claims. After a two-day

21 bench trial, the Court concluded that Defendants had provided Cody with a free

22 appropriate public education and had met all of its obligations to Cody under the IDEA

23 for the 2003-04, 2004-05, and 2005-06 school years. Plaintiffs' other claims were

24 dismissed with prejudice and without further leave to amend because their proposed

25 amended complaint demonstrated amendment was futile. Plaintiffs had failed to exhaust

26 their administrative remedies, made only bare accusations of intentional discrimination

27 and deliberate indifference, and failed to allege injury or damages above the speculative

28 level. All of Plaintiffs' alleged injuries under the Americans with Disabilities Act and

§ 504 of the Rehabilitation Act were educational in nature and could have been redressed to some degree by the IDEA's administrative procedures and remedies if Plaintiffs had timely presented them to the District. But Plaintiffs did not notify the District of any alleged discrimination when it would have been possible to make corrections for Cody's benefit during the 2003-04, 2004-05, and 2005-06 school years. They did not raise any issues of alleged discrimination during administrative proceedings. Even by 2008, Plaintiffs did not articulate how the District had allegedly discriminated against Cody on the basis of disability and how he could meaningfully be compensated for the alleged discrimination.

Now, Plaintiffs contend they are the prevailing parties:

> [The fact that] Defendants here successfully argued that Plaintiffs were not entitled to compensatory services supports a finding that Plaintiffs in fact were prevailing parties, as this litigation along with the concomitant due process hearings that Plaintiffs filed, were the "but for" cause that led this Court to conclude that compensatory education services were not available because Plaintiffs were already being provided a free, appropriate public education ("FAPE"). It supports just the opposite proposition from what Defendants advance here. In short, under a "catalyst" theory, Plaintiffs could be deemed the prevailing party in that "but for" the existence of this litigation, and other efforts, it is evident that Defendants would not have provided a free, appropriate public education beginning in the 2007-2008 school year to CJP.

(Doc. #104 at 4-5.) In other words, Plaintiffs contend that they prevailed in this action by using the administrative proceedings and court litigation regarding the 2003-04, 2004-05, and 2005-06 school years (and settling their claims for the 2006-07 school year) to get everything they wanted for the 2007-08 school year—even though Defendants had met their federal obligations to Cody for the 2003-04, 2004-05, and 2005-06 school years.

Plaintiffs' reasoning does not support finding them to be the prevailing parties. It suggests, rather, they have used this litigation for an improper purpose. Moreover, Defendants are not seeking reimbursement for their attorneys' fees incurred during the administrative proceedings, which Plaintiffs argue is the "but for" cause of the District providing "a free, appropriate public education beginning in the 2007-2008 school year to CJP." Defendants seek reimbursement of only fees incurred on and following December

1 | 7, 2007, four months after Plaintiffs initiated this court action on August 10, 2007, and

2 | midway through the 2007-08 school year.

3 | Therefore, Defendants were completely successful in defending against all of

4 | Plaintiffs' claims and are the prevailing parties.

**IV. Defendants Meet the IDEA's Requirements for Award of Attorneys' Fees and Non-taxable Costs.**

**A. Legal Standard**

Under the IDEA,

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--.
>
> (I) to a prevailing party who is the parent of a child with a disability;
>
> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

20 U.S.C. § 1415(i)(3)(B)(i).

In 2000, the IDEA provided an attorneys' fee award only to a prevailing party who is the parent of a child with a disability. *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 300 n.2 (2006). In 2004, Congress amended the IDEA to provide an attorneys' fees award to a prevailing state or local educational agency, but only under certain conditions. *Id.* Fees may be awarded against the attorney of a parent where the complaint filed is "frivolous, unreasonable, or without foundation" or where the attorney "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II). Fees also may be awarded against the attorney of a parent or against the parent if the complaint or cause of action was presented for any improper purpose. 20 U.S.C. § 1415(i)(3)(B)(i)(III). Thus, a fee award

1  in favor of a school district under subparagraph (II) is available only against the attorney

2  conducting the litigation, while an award under subparagraph (III) is available against

3  both the attorney and the parents.  *See E.K. ex rel. Mr. K. v. Stamford Bd. of Educ.*, No.

4  CV-07-0800, 2009 WL 995607  (D. Conn. Mar. 31, 2009) (awarding fees to school board

5  against plaintiff's counsel who continued to litigate an IDEA claim after the litigation

6  clearly became frivolous, unreasonable, or without foundation).

7       **B.     Analysis**

8       The parties agree that the vast majority of their efforts and time has been spent

9  litigating Plaintiffs' IDEA claim.  Of the $129,951.50 total attorneys' fees requested, all

10  but $13,974.00 is related to defending against the IDEA claim.  (Doc. #108 at 10 n.7.)

11       **1.     Plaintiffs' IDEA Claim Was Without Foundation.**

12       On August 10, 2007, when Plaintiffs filed their Complaint initiating this lawsuit,

13  they alleged they were entitled to compensation for their expenses associated with

14  Defendants' failures to comply with the IDEA although they had not incurred any such

15  expenses.  Plaintiffs sought "compensation for past failures to educate and admitted

16  violation of the IDEA and other obligations under State and Federal law" although money

17  damages are not available under the IDEA.  They had obtained all of the educational

18  services they wanted for Cody, and neither Plaintiffs nor their experts proposed any

19  compensatory education that the Court could order in 2008 to compensate Cody for any

20  deprivation of educational services in 2003-06.  Even if Plaintiffs were able to prove an

21  IDEA violation, they were not entitled to any remedy under the IDEA.

22       From the outset of litigation, Plaintiffs lacked a factual and legal basis for their

23  IDEA claim.  Therefore, as prevailing parties defending against parents who filed a

24  complaint that is without foundation, Defendants meet the requirements for an attorneys'

25  fee award against Plaintiffs' counsel under 20 U.S.C. § 1415(i)(3)(B)(i)(II).

26       **2.     The Complaint Was Presented for an Improper Purpose.**

27       From 2003 until November 2006, Plaintiffs met with Cody's teachers, participated

28  in the IEP process, were in a position to observe Cody's educational progress, and never

objected to the composition of Cody's IEP Teams, his placement, his IEPs, or the instructional and behavioral methods used to implement his IEPs. Then, in November 2006, despite all of the services the District provided, Cody's assessment results showed that he remained significantly behind other children his age. Shortly thereafter, Plaintiffs filed a Due Process Complaint requesting compensation in the amount of $73,500 for additional tutoring.[2] By the time the ALJ ruled on Plaintiffs' administrative claim in May 2007, the District already was providing Cody the specific programs and staffing Plaintiffs requested. When they filed their Complaint seeking judicial review of the ALJ's decision in August 2007, even if the District had violated requirements of the IDEA, which it had not, there was nothing more for Plaintiffs to get from the District that would benefit Cody. The only proper purpose for seeking judicial review was foreclosed from the beginning.

The most directly inferrable actual purpose for initiating this litigation is anger as indicated by Plaintiffs' response to Defendants' fee application:

> It is understandable that parents would vigorously pursue efforts to obtain something more for their child, when they have learned that their child was making no measurable gains, that the IQ of their child had in fact gone down over the measurable period . . . . Add to the fact that after they became aware (see letters from Nancy Martinez, Exhibits C and D) that other autistic children were receiving district-paid tuition to private educational facilities because the District admitted it had no viable program, and no such offer was ever made available to their child, their anger would increase even more.

---

[2]The propriety of Plaintiffs' purpose in filing the Due Process Complaint is not at issue here because the District is not seeking reimbursement of its attorneys' fees related to administrative proceedings.

1 (Doc. #104 at 6-7.)[3] Anger coupled with a proper purpose is not improper, but anger

2 alone is not a proper purpose for pursuing litigation. Although other improper purposes,

3 such as monetary gain from the extortion value of meritless litigation, may easily be

4 inferred from the record, finding that Plaintiffs were motivated by anger without a proper

5 purpose is sufficient to establish the Complaint was presented for an improper purpose.

6       The record establishes that Plaintiffs filed their Complaint in this action and

7 continued to litigate this action for an improper purpose. Therefore, as prevailing parties

8 defending against parents whose complaint was presented for an improper purpose,

9 Defendants meet the requirements for an attorneys' fee award against Plaintiffs and their

10 counsel under 20 U.S.C. § 1415(i)(3)(B)(i)(III).

11 **V.    Defendants Meet the ADA, § 504, and § 1988 Requirements for Award of Attorneys' Fees and Non-taxable Costs.**

12     **A.    Legal Standards**

13 For ADA claims, 42 U.S.C. § 12205 provides:

14
15     In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including

16     litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

17 For § 504 claims, 29 U.S.C. § 794a(b) provides:

18
19     In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing

20     party, other than the United States, a reasonable attorney's fee as part of the costs.

21 For § 1983 claims, 42 U.S.C. § 1988(b) provides:

22

23     [3]Exhibit C is a letter dated November 17, 2006, which states that the District did not

24 currently have an autism program at the middle and high school level and recommended that the children remain in Missouri. It did not offer to pay for a private program. Exhibit D is

25 a letter dated November 22, 2005, which states that the District would not have an autism program in place for the second semester of the 2005-06 school year, but would continue to

26 pay for placement at Play ABA for the second semester. Martinez testified that the District

27 paid private school tuition for two students during the 2005-06 school year because their needs were more severe than could be met by the cross-categorical program available in the

28 District.

. . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . .

Under each of the foregoing statutes, the district court may award a prevailing defendant a reasonable attorneys' fee if the plaintiff's action was frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) ("[A] district court may in its discretion award attorney's fees to a prevailing defendant in a title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."); *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) ("A district court may award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing civil rights defendant if the plaintiff's action was unreasonable, frivolous, meritless, or vexatious."); *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1154 (9th Cir. 1997) (applying *Christiansburg* standard to ADA claim). "In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22.

**B.      Plaintiffs' Claims Related to the ADA, § 504, and § 1988 Were Without Foundation from the Onset of Litigation.**

To succeed on any of their non-IDEA claims, Plaintiffs were required to prove that Cody was excluded from participation in or denied the benefits of the District's services, programs, or activities because of his disability. 29 U.S.C. § 794(a) (§ 504 of the Rehabilitation Act); 42 U.S.C. § 12132 (ADA). Federal regulations interpreting § 504 require school districts to provide regular or special education and related aids and services "designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33.

In their opposition to Defendants' fee application, Plaintiffs assert, "The fact that their child was singled out and treated differently because of his handicap, while not the focus of their education [sic], was also present and formed the basis for the § 504 and ADA claims." (Doc. #104 at 7.) Plaintiffs also claim, "CP was denied the opportunity to

- 15 -

1 interact with the same age, non-handicapped peers, and was denied a right to attend

2 school until the 'normal' children were acclimated." (*Id.* at 9.)

3       However, in their Complaint and their untimely proposed First Amended

4 Complaint, Plaintiffs made no factual allegations that would show Cody was excluded

5 from participation in or denied the benefits of programs or services because of his

6 disability or that the services he received were not designed to meet his needs as

7 adequately as the needs of nonhandicapped persons were met. Plaintiffs' proposed First

8 Amended Complaint summarily alleged that Cody "did not have a program designed to

9 meet his educational needs comparable to what regular education students were given."

10 (Doc. #84.) They further alleged "[t]here was no systematic curriculum provided

11 designed to focus on his acquisition of primary skills that would allow for building upon

12 acquired skills to progress to acquire more complex educational skills." They also

13 alleged that the programs designed and implemented for Cody "were not designed to

14 allow him the benefit of statewide standards available to regular education students" and

15 did not "include objective measures of his current levels of academic functioning as were

16 provided to regular education students." When Cody began school in the District, he

17 could not drink from a cup and did not respond to his name. He could name some objects

18 and a few pictures. He could scribble, but could not draw a recognizable picture. His

19 behavioral functioning was assessed as below the first percentile. It likely would have

20 been impossible to assess Cody against the statewide standards for regular education

21 students using objective measures as were provided to regular education students.

22 Moreover, Plaintiffs never alleged that providing Cody with a curriculum and standards

23 similar to those provided to nonhandicapped students would have made a difference for

24 Cody.

25       Plaintiffs' proposed First Amended Complaint also alleges that Cody was not

26 allowed to participate in recess, lunch, or physical education with nonhandicapped

27 students without reference to when and for how long Cody was denied such opportunities.

28 Alleging that the District needed time to prepare nonhandicapped students to interact with

Cody, who did not speak in sentences, did not interact with other students, and was not toilet trained, did not support a claim of discrimination on the basis of disability.

But even if Plaintiffs' allegations regarding educational curriculum, statewide standards, and mainstreaming opportunities had been adequately and timely pled, Plaintiffs were required and failed to exhaust IDEA administrative remedies regarding these claims. 20 U.S.C. 1415(l). Thus, from the onset of litigation, their non-IDEA claims that they had not raised during IDEA administrative proceedings were groundless.

Finally, Plaintiffs' Complaint and proposed First Amended Complaint sought compensatory damages and punitive damages although Plaintiffs had not incurred any out-of-pocket expenses, did not allege any compensable injury, did not allege any program or service exists that could compensate Cody for the District's alleged statutory violations, and did not allege any basis for obtaining punitive damages. Plaintiffs' claims related to the ADA, § 504, and § 1988 were therefore without foundation.

## VI. The Court Will Exercise Its Discretion to Award Attorneys' Fees and Non-taxable Costs to Defendants.

In the absence of legislation providing otherwise, litigants in the United States generally must pay their own attorneys' fees. *Christiansburg*, 434 U.S. at 415. Congress has provided only limited exceptions to the general rule under selected statutes granting or protecting various federal rights. *Id.* Some make fee awards mandatory for prevailing plaintiffs; some make awards permissive but limit them to prevailing plaintiffs. *Id.* at 415-16. But many fee-shifting statutes authorize the award of fees to either plaintiffs or defendants, "entrusting the effectuation of the statutory policy to the discretion of the district courts." *Id.* at 416. Allowing fee awards to prevailing defendants is intended "to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420.

Here, Plaintiffs initiated this litigation without legal or factual basis. Moreover, Plaintiffs continued this litigation through a two-day bench trial on their primary claim, then sought leave to amend their Complaint to litigate other claims, and proposed

- 17 -

remanding the case for further administrative evidentiary proceedings to attempt to find

some compensatory program or service beyond what Cody already receives that would

provide any benefit to him.  The District more than satisfied its federal obligations to

provide educational services to Cody and to accommodate his parents, yet was forced to

incur substantial legal expenses to defend against Plaintiffs' claims having no legal or

factual basis.  The District has expended resources that could have been directed to other

purposes, including providing services for other students in need.  It is appropriate,

therefore, to protect Defendants from this burdensome litigation by awarding reasonable

attorneys' fees and non-taxable costs.

## VII.   Defendants' Requested Attorney's Fees and Non-taxable Costs Are Reasonable.

A party opposing a fee award must "identify with specificity all disputed issues of

material fact" and "separately identify each and every disputed time entry or expense

item."  LRCiv 54.2(f).  Plaintiffs have not disputed any specific billing entry, hourly rate,

time spent, or non-taxable cost.  Notwithstanding Plaintiffs' failure to make any specific

objections, the Court will assess the reasonableness of Defendants' fee request.

In awarding attorneys' fees, the district court must assess what is a reasonable fee

under the circumstances of the case.  *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).

Calculating a reasonable fee award usually involves a two-step process:

> First, the court must calculate the "lodestar figure" by taking the number of
> hours reasonably expended on the litigation and multiplying it by a
> reasonable hourly rate.  Second, the court must decide whether to enhance
> or reduce the lodestar figure based on an evaluation of the *Kerr* factors that
> are not already subsumed in the initial lodestar calculation.

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citations and footnote

omitted).  The *Kerr* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly; (4)
> the preclusion of other employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)
> time limitations imposed by the client or the circumstances; (8) the amount
> involved and the results obtained; (9) the experience, reputation and ability
> of the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in

- 18 -

1   similar cases.

2   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9ᵗʰ Cir. 1975); *Morales v. City of San*

3   *Rafael*, 96 F.3d 359, 363-64 & n.8 (9ᵗʰ Cir. 1996); *see* LRCiv 54.2(c)(3).

4   Defendants' counsel rendered a total of 751.9 hours in legal services in defending

5   this case. The Court finds the amount of time to be reasonable in light of the number and

6   nature of Plaintiffs' claims. Although the case did not pose novel or extremely difficult

7   questions, Defendants' counsel's substantial experience, skill, reputation, and ability

8   more than justify the requested hourly rates, which are extremely reasonable for the

9   Phoenix market. The Court finds Defendants' request for an attorneys' fee award in the

10  amount of $129,951.50 to be reasonable.

11  The Court also finds defendants' request for an award of non-taxable costs in the

12  amount of $11,260.21 to be reasonable.

13  **VIII. Conclusion**

14  Defendants have incurred compensable attorneys' fees and non-taxable costs even

15  though the fees and costs have been paid by their insurer because they are obligated to

16  repay the insurer in the event they receive a fee award. Defendants are the prevailing

17  parties because they successfully defended against all of Plaintiffs' claims. Because all of

18  Plaintiffs' claims were without foundation from the onset of litigation, the Court may

19  exercise its discretion under the relevant statutes to award Defendants attorneys' fees and

20  non-taxable costs on all of Plaintiffs' claims. The Court will exercise its discretion to do

21  so to protect Defendants from burdensome litigation having no legal or factual basis. The

22  amounts Defendants request for attorneys' fees and non-taxable expenses are reasonable,

23  and therefore the amounts sought will be awarded.

24  IT IS THEREFORE ORDERED that Defendants' Motion for Award of Attorneys'

25  Fees and Related Non-taxable Expenses (doc. #93) is granted.

26  IT IS FURTHER ORDERED that Plaintiffs' request for attorneys' fees in

27  opposing Defendants' Motion is denied.

28

1    IT IS FURTHER ORDERED that the Clerk enter judgment pursuant to Fed. R.

2  Civ. P. 54(d) and LRCiv 54.2 in favor of Defendant Prescott Unified School District and

3  against Plaintiffs Raymond Parenteau and Jolene Parenteau and their counsel Gary L.

4  Lassen and the Law Office of Gary L. Lassen, PLC, jointly and severally for **$129,951.50**

5  for attorneys' fees and for **$11,260.21** for non-taxable costs, plus interest at the federal

6  rate from the date of judgment until paid.

7        Dated: July 17, 2009.

8

9

10

11  _____
                Neil V. Wake
12            United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28