1

2                    IN THE UNITED STATES DISTRICT COURT

3                        FOR THE DISTRICT OF ARIZONA

4                                          )
                                           )
5       Raymond Parenteau and Jolene       )  No.  **CV 07-8072-PCT-NVW**
        Parenteau, husband and wife,       )
6       and Raymond and Jolene             )
        Parenteau on behalf                )       **Phoenix, Arizona**
7       of their minor son, CP,            )       **October 29, 2009**
                                           )          **3:24 p.m.**
8                        Plaintiffs,       )
        vs.                                )
9                                          )
        Prescott Unified School            )
10      District, an Arizona School        )
        District; et al.,                  )
11                                         )
                         Defendants        )
12

13

                BEFORE:  **THE HONORABLE NEIL V. WAKE**
14                  UNITED STATES DISTRICT JUDGE

15                      (*Motion Hearing*)

16

17

18

19

20

21      Official Court Reporter:
        Laurie A. Adams, RMR, CRR
22      Sandra Day O'Connor U.S. Courthouse, Suite 312
        401 West Washington Street, SPC 43
23      Phoenix, Arizona 85003-2151
        (602) 322-7256
24
        Proceedings Reported by Stenographic Court Reporter
25      Transcript Prepared by Computer-Aided Transcription

1

2

**APPEARANCES:**

3

For the Plaintiff:

4

               Buckley King LPA

5

               By:  **Michael Salcido, Esq.**
               2020 North Central Ave

6

               Suite 1120
               Phoenix, AZ 85004

7

For Gary L. Lassen PLC:

8

               Law Offices of William R. Hobson

9

               By:  **William R. Hobson, Esq.**
               7303 West Boston St

10

               Chandler, AZ 85226

11

For the Defendants:

12

               Jones Skelton & Hochuli PLC

13

               By:  **Georgia A. Staton, Esq.**
               By:  **Rachel Love, Esq.**

14

               2901 North Central Ave
               Suite 800

15

               Phoenix, AZ 85012

16

17

18

19

20

21

22

23

24

25

────────── October 29, 2009 - Motion Hearing ──────────

1              P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Civil Case CV 08-8072, Raymond

3    and Jolene Parenteau versus Prescott Unified School District,

4    et al., on for a motion hearing.

5          Counsel, please announce.                                15:24:18

6          MR. HOBSON:  William Hobson, Your Honor, representing

7    Gary Lassen.

8          MR. SALCIDO:  Your Honor, Michael Salcido for the

9    Parenteaus.

10          MS. STATON:  Georgia Staton and Rachel Love on behalf    15:24:30

11    of Prescott Unified School District, Your Honor.

12          THE COURT:  Counsel, I have kept you waiting for which

13    I apologize because I was reading Mr. Hobson's reply which was

14    due to be filed no later than yesterday but was apparently

15    E-filed around 1:00 today.                                    15:24:59

16          MR. HOBSON:  Yes, Your Honor.  I knew Mr. Salcido was

17    coming on board and had not had a chance to review that.  I

18    apologize.

19          THE COURT:  I'm explaining why I kept you waiting.  If

20    you file it at 1:00 you can't expect me to have read it by     15:25:12

21    3:00.

22          MR. HOBSON:  I understand, Your Honor.  My apologies.

23          THE COURT:  All right.  No party requested a hearing

24    on this motion, just as no party requested a hearing on the

25    attorney's fees motion.  But since there has been complaint    15:25:39

1  that I did not grant a hearing on the attorney's fees motion

2  even though there was no request made, I have set this hearing

3  so that everyone can be heard as to whatever they would like to

4  say.  And I have read your briefs.

5       So I guess -- oh.  And Mr. Salcido, there's another          15:25:55

6  matter we need to address on the record.  You are the same Mike

7  Salcido who represented a person I sued four or five years ago,

8  right?

9       MR. SALCIDO:  That's correct, Your Honor.

10      THE COURT:  Let's see.  In about 2004, is that about         15:26:10

11  right, I filed a lawsuit, a securities fraud lawsuit against

12  a -- my life insurance salesman and some related securities

13  company for what I contended to be fraud in connection with the

14  sale of a life insurance policy.  And we agreed to submit that

15  matter to binding arbitration before NASD.  And Mr. Salcido     15:26:37

16  represented somebody.

17      MR. SALCIDO:  Spivak.  I represented Stuart Spivak.

18      THE COURT:  That matter was settled and concluded two

19  years ago in July.

20      MR. SALCIDO:  Yes, sir.                                      15:26:53

21      THE COURT:  And for some time, Mr. Salcido I made a

22  point of not sitting on any case which you were involved.  I

23  don't even recall whether I had any such cases.  I just knew I

24  wouldn't sit on any.

25       Your appearance in this case raises this question, and     15:27:04

─────── October 29, 2009 - Motion Hearing ───────

1   it's been two and-a-half years.  It's been two years and two or

2   three months since that matter was concluded.  I don't have any

3   subjective bias for or against you.  I certainly don't have any

4   subjective bias for or against either Mrs. or Mr. Parenteau or

5   Mr. Lassen.                                                    15:27:33

6        But the rule of disqualification under Title 28,

7   United States Code Section 455(a) -- well, there's a variety of

8   rules.  But the catch-all rule is whether a judge's

9   impartiality could reasonably be questioned, and if -- so I put

10  that on the table, and the way I see it, Mr. Salcido, I don't   15:27:58

11  have a subjective discomfort at all in your participation in

12  this case.  But if -- it seems to me that if any party feels

13  that this somewhat amorphus standard of Section 455(a), that

14  is, whether a judge's impartiality could reasonably be

15  questioned is implicated, it seems to me the proper course of   15:28:28

16  action is for me to kick you out of this lawsuit.  I would have

17  no desire to have this or any case -- but having presided over

18  this case for as long as I have, it strikes me as inappropriate

19  for me to allow this to be thrust upon another judge who would

20  then have to reinvent a wheel, a wheel with which I have        15:28:53

21  extensive and regrettable familiarity.

22       So that's my sense of it, Mr. Salcido, and I need to

23  put this to everyone.  I don't see recusing on this case

24  because of your presence but I do see kicking you out if

25  anybody thinks your presence is a problem.                     15:29:14

———October 29, 2009 - Motion Hearing———

1          MR. SALCIDO:  May I talk to --

2          THE COURT:  You may.

3          (Discussion off the record.)

4          MR. SALCIDO:  Your Honor, I don't think there's a

5    problem, or else I wouldn't have appeared and I believe that          15:29:35

6    Mr. Lassen --

7          THE COURT:  I assumed that as well.  I came up with

8    that solution because a judge did that to me once when I was a

9    lawyer.

10          So Mr. Lassen, are you consent -- are you content to          15:29:46

11    forego any contention of my disqualification from Mr. Salcido's

12    participation in the case?

13          MR. LASSEN:  I have no objection.

14          THE COURT:  Mr. Hobson?

15          MR. HOBSON:  No objection, Your Honor.          15:30:06

16          THE COURT:  And Ms. Staton, you have the same

17    position?

18          MS. STATON:  Same position, Your Honor.  No objection.

19          THE COURT:  All right.  Now, with that, this is Mr.

20    and Mrs. Parenteau and Mr. Lassen's motion.  I will allow          15:30:19

21    either counsel who wants to go first, and I will hear whatever

22    you have to say and I will probably have some questions as

23    well.

24          So whoever would like to proceed.

25          MR. HOBSON:  Thank you, Your Honor.  William Hobson.          15:30:32

─────────── October 29, 2009 - Motion Hearing ───────────

1    I represent Mr. Lassen in this matter, Your Honor.

2          Judge, this is a motion seeking a stay of execution of

3    a judgment that the Court has entered in this case.  And the

4    parties have briefed it to the Court, but the essential -- when

5    you get past the window dressing, the essential issue is          15:31:01

6    balancing of equities and relative hardships to fashion a

7    remedy to preserve the status quo in the interests of all the

8    parties pending the disposition on appeal.

9          Although there's some difference in the analysis, Your

10   Honor, there is an agreement.  There is no mandatory              15:31:19

11   requirement for a supersedeas bond, the cases say.  The Court

12   may stay execution and suspend --

13          THE COURT:  Well, but the cases say there's no

14   mandatory requirement for supersedeas bond but the Court is

15   required to secure the judgment creditor.  Other forms of        15:31:36

16   security are acceptable, and it's never been my understanding

17   that the Court can simply say you can't execute and there's no

18   security either.

19          MR. HOBSON:  I understand, Your Honor.  But the cases

20   also say the Court has broad discretion to set the security for  15:31:49

21   an injunction.  It is discretion that's vested in the Court's

22   inherent discretion.

23          THE COURT:  But that's determining the security, not

24   deciding whether there shall be no security.

25          MR. HOBSON:  I understand.                                 15:32:11

─── October 29, 2009 - Motion Hearing ───

1      THE COURT:  Do I have broad discretion to say, there

2  is a judgment and there shall be no security?  Do I have that

3  discretion?  I'm not familiar with any principle that says

4  that.

5      MR. HOBSON:  I think, Your Honor, there are cases, and    15:32:20

6  I think we have cited them in our reply, that suggest that the

7  Court can even go that far.  But we're not asking for that,

8  Your Honor.  We -- I submit that some security may be

9  appropriate in the circumstances.

10      THE COURT:  Well, the *Townsend* case that you cite says    15:32:36

11  straight out, the Court has discretion as to this form of

12  security.  Doesn't say that the Court can dispense with

13  security.

14      MR. HOBSON:  I understand, Your Honor.  And, Your

15  Honor, I'm not -- we're not suggesting that the Court dispense    15:32:48

16  with security.  But I think that the discretion -- the Court's

17  discretion, as I understand the case law in this area, is very

18  broad and the Court can look to numbers of different factors.

19  For example, one of the concerns that judgment creditors would

20  have is whether when you get to the end of this appeal is their    15:33:07

21  judgment going to be something that can be satisfied.

22      And we submit, Your Honor, that the answer is, given

23  Mr. Lassen's status in this community, his longstanding service

24  as a lawyer --

25      THE COURT:  But that's not security.  That's just    15:33:25

UNITED STATES DISTRICT COURT

1    hope.

2        MR. HOBSON:  Well, Your Honor, Mr. Lassen has 33 years

3    of practice in the community.  He's not a lawyer who is unknown

4    to the community.  And he is somebody who, you know, ultimately

5    at the end of the day, should it be required that he -- if the        15:33:44

6    Court's judgment in this matter is affirmed --

7        THE COURT:  Well, you submitted to me nothing in the

8    way of affidavits about assets, resources, things that could be

9    encumbered or otherwise made secure to be looked to for --

10   nothing.  You have given me nothing other than the fact, which      15:34:08

11   we all know, Mr. Lassen is an experienced and highly respected

12   lawyer in town.

13       MR. HOBSON:  Your Honor, there are, in fact --

14   there's, in fact, been a judgment debtor's exam that Mr. Lassen

15   has submitted to last week under oath where he gave an             15:34:26

16   extensive accounting of his assets and what there is.  You

17   know, it's not that he's hiding assets.  He doesn't have the

18   kinds of assets that -- to satisfy a $130,000 judgment today.

19   When he went looking -- and we did offer a declaration, Mr.

20   Lassen has attested in his declaration he did attempt to find a      15:34:45

21   supersedeas bond.  And the simple fact, Your Honor, is the

22   capital markets in July of last year collapsed.  And you can't

23   get a bond these days unless you can give them unencumbered

24   collateral or a liquid assets.  I mean, you have got to be able

25   to pledge that and nobody has that.                                  15:35:07

```
──────── October 29, 2009 - Motion Hearing ────────
```

1      THE COURT:  Well, I don't have hands-on familiarity

2  with what's happened in the last year and a half.  But I do

3  know from appellate law practice that's basically how it works,

4  that you can't get surety bonds without something equivalent to

5  either a full cash collateral or security that is so good that          15:35:23

6  the bonding company is perfectly content to undertake the full

7  expense of executing upon that collateral.  So I know that, and

8  that's not real different from what -- the way things have

9  always been.

10      Now, some clients who have very, very, very                        15:35:43

11  substantial clients that can otherwise borrow unsecured can

12  also get a supersedeas bond unsecured.  But that has to do with

13  the financial strength and the borrowing and insurance

14  relations of that kind of an entity more than with anything

15  about supersedeas bonds.  So what you are saying is entirely          15:36:12

16  consistent with my own experience.

17      MR. HOBSON:  I understand, Your Honor.

18      THE COURT:  You can't get -- normal people can't get a

19  supersedeas bond without something like a full cash collateral

20  or some other assets that are so secure.                              15:36:29

21      Now, that goes to a bond.  But the Court, as I

22  understand it, does have judgment and discretion to accept

23  other forms of security.

24      MR. HOBSON:  And --

25      THE COURT:  I have seen nothing from you in that                  15:36:45

─────── **October 29, 2009 - Motion Hearing** ───────

1    regard.

2         MR. HOBSON:  Well, Your Honor, we did suggest in our

3    reply that Mr. Lassen would make an agreement that he would not

4    transfer assets except in the ordinary course of business in

5    his -- I mean, you understand his general accounts have already    15:36:59

6    been garnished by these folks, you know, and he's a working

7    lawyer like lots of working lawyers and he doesn't have a lot

8    of money flowing through the door.

9         You know, Your Honor, we submit that at the end of the

10    day, if the appeal is -- if we lose on the appeal and the    15:37:18

11    Court's judgment is affirmed, these folks are going to come to

12    Mr. Lassen -- by the way, they will be receiving interest on

13    the judgment in the interim, so it's not like it's a complete

14    loss to them.  At the end of the day they will come to Mr.

15    Lassen and he'll have to restructure his life and practice.    15:37:36

16    But if the Court's judgment is affirmed he's going to pay that.

17    I mean, that's just the way it will be.  And I'm sure Mr.

18    Lassen would concur in that remark, Your Honor.

19         In the meantime, however, there are, we submit,

20    important issues that are on this appeal.  And I don't want    15:37:59

21    to -- it's not for us to relitigate what the Court has already

22    decided, that the Court of Appeals will either affirm or not,

23    and what we're looking for is the opportunity to get to the

24    point of the Court's -- of the Ninth Circuit Court's decision

25    in a reasonable fashion with what assurances we can make.  We    15:38:19

———— October 29, 2009 - Motion Hearing ————

1    will be, of course, happy to answer any questions the Court has

2    about --

3            THE COURT:  Well, my question is about the basic

4    contention here that the Court can simply forego security and

5    still stay execution.  I'm just -- again, I just got your reply    15:38:40

6    brief in which you raise things for the first time.  And I am

7    not familiar with any principle that the Court can simply elect

8    to forego security because the defendant can't pay.

9            MR. HOBSON:  Your Honor --

10           THE COURT:  As opposed to unusual circumstances where    15:39:02

11   it is so completely obvious that the defendant can -- or the

12   judgment debtor can pay, that requiring the formality of a

13   surety bond simply increases the premium for needless costs

14   that adds no benefit to the judgment creditor.  That's not this

15   situation.    15:39:19

16           MR. HOBSON:  I understand, Your Honor.

17           Judge, I would submit, however, that the Court can

18   make -- and we're not asking the Court to just entirely waive

19   security.  But I think the Court can make other kinds of

20   orders, for example, making an order that Mr. Lassen cannot    15:39:33

21   transfer asset in the interim except --

22           THE COURT:  What assets?  See, I don't know what

23   assets we're talking about.  I'm completely uncomfortable with

24   being asked to give a blanket order not to transfer assets.  I

25   don't know what assets they are.  They might be assets that    15:39:50

UNITED STATES DISTRICT COURT

—————October 29, 2009 - Motion Hearing—————

1   could otherwise be secured and made available.  So I just don't

2   know what you are asking for, which is not to say that I'm

3   uninterested in what you might say, but --

4        MR. HOBSON:  Well, Mr. Lassen submitted to a judgment

5   debtor's exam, Your Honor, and he gave an accounting of his    15:40:09

6   assets under oath.  I mean, they know what he has.  And it's

7   not significant, quite candidly.  I mean, he owns some property

8   in Pinal County and Coconino County which at one point before

9   the collapse had some value.  It doesn't.  But -- and he's

10  given to Ms. Staton that information and presumably they are    15:40:31

11  checking it out.  They found out what his general account

12  numbers were and they have garnished those.  Those don't have

13  significant amounts of money in them.

14        The simple fact is that he's a working lawyer with not

15  huge assets.  What we're asking -- and the Court does have -- I   15:40:52

16  submit the Court does have discretion to choose a bond other

17  than the full amount of the judgment.

18        THE COURT:  That I don't know.  I'm unfamiliar with

19  that principle of law.  And I guess at a minimum, I would want

20  to have the other side have an opportunity to respond to that.   15:41:09

21  Because you assert that for the first time in the reply brief

22  you filed two hours and 40 minutes ago which I didn't see until

23  3:00.

24        So --

25        MR. HOBSON:  Your Honor, additionally, I would just   15:41:24

1   point out to the Court when -- Mr. Lassen was not aware that he

2   was going to be the person, or one of the people against whom

3   fees were going to be awarded until the Court's decision in

4   this matter.  The Court's decision has, in fact, created this

5   problem where Mr. Lassen, in a collections matter, has a          15:41:48

6   conflict of interest hence Mr. Parenteau's or -- excuse me --

7   Mr. Salcido's appearance on behalf of the Parenteaus in the

8   collections part of this case.

9         THE COURT:  Mr. Hobson, the briefing you filed here,

10  well, it asserts many things.  But it raised some issues that     15:42:09

11  made me think I should have this discussion with you and I

12  will, however I rule on this, I will file a written order.  But

13  it's asserted in your briefs and Mr. Lassen's briefs that it is

14  objected that I did not give a hearing on the motion for fees.

15  I assure you I thought about that.  No party asked for a          15:42:40

16  hearing.  No party asserted a hearing was necessary.  The

17  motion was fully briefed.

18        No one having asked for a hearing, it appeared to me

19  that everyone was content with the Court ruling on what was

20  before it.  If anyone had asked for a hearing, I would have       15:42:57

21  granted it for any purpose.

22        And there's also an assertion in these briefs that

23  both Mr. Lassen and Mr. and Mrs. Parenteau would suffer a

24  hardship from this fee sanction.  It was never suggested in the

25  briefing on the motion that hardship was even a relevant factor   15:43:17

———October 29, 2009 - Motion Hearing———

1    that the Court should consider.

2         Now, if anybody had asserted that hardship should be

3    considered, I would have considered it.  There was no evidence

4    presented to me of any hardship to either Mr. or Mrs. Parenteau

5    or Mr. Lassen.  But if there were such evidence I would have          15:43:40

6    considered it and I surely would have granted an evidentiary

7    hearing to have elaborated on it and given the opposing side a

8    chance to consider it.

9         So to the extent those are factors that -- they are

10   factors that were not at all asserted to me and not put before       15:43:55

11   me as a grounds for decision.  And as I said, I would have

12   given full weight to all of that, but none of it was presented.

13         MR. HOBSON:  I understand, Your Honor.  I was not

14   involved in the case at that point, Judge, so -- and the record

15   is what the record is.  It was my understanding that there was       15:44:13

16   evidence in front of the court that Mr. and Mrs. Parenteau had

17   lost their assets and had to move out of the district.

18         THE COURT:  Frankly, I don't recall whether there was

19   but I do recall, because I re-read it, there was nothing on the

20   motions for fees that in any way suggested that there was a          15:44:30

21   hardship or that the Court should give weight to that which, in

22   any event, I would have given weight to that --

23         MR. HOBSON:  I understand.

24         THE COURT:  -- if it had been suggested and if there

25   were evidence to support it.                                         15:44:43

─────── October 29, 2009 - Motion Hearing ───────

1        I also, in re-reading the -- first of all, this order

2   is on appeal.  I lack the jurisdiction to change that order.

3   If there's error in that order, I cannot fix the error in that

4   order.

5        MR. HOBSON:  And, Your Honor, we aren't asking the          15:45:02

6   Court.  I understand exactly.

7        THE COURT:  What's more, if there were error in that

8   order I would have had authority, under Rule 59, to fix any

9   error if it had been filed within 10 days.  And no motion was

10  filed under Rule 59.                                            15:45:15

11       So my order is what it is with whatever issues that

12  were presented or not.  But re-reading it, it occurred -- and

13  in reading your briefs it seems to me that it is appropriate

14  for me to say -- and I will put this in writing -- that I never

15  was asked -- it was never asserted to me that subjective bad    15:45:36

16  faith on the part of Mr. Lassen was necessary to an assessment

17  of fees against him under Section -- it's 28 USC

18  1415(i)(3)(B)(i)(II).

19       This is the section that applies only to fees against

20  an attorney, which it was expressly cited and claimed in the    15:46:07

21  motion as one of the two alternate bases for fees.  This only

22  authorizes fee assessment against the attorney.  Fees were also

23  sought under Subsection 3 that authorize fees against both the

24  attorney and the parent.

25       But it was never asserted to me that subjective bad        15:46:29

─── October 29, 2009 - Motion Hearing ───

1    faith was necessary for liability there, and I never made a

2    finding.  I did not make a finding that Mr. Lassen acted out of

3    subjective bad faith.  I found that that statute applied

4    because the action was without foundation.  And I thought it

5    objectively groundless, and therefore, the statute applied.          15:46:55

6         And also, under Subsection III, the alternate ground

7    that authorizes fee awards against both the parent and the

8    attorney, my order plainly says that I found that the action

9    was brought for a bad -- for an improper purpose and that is

10   solely out of anger.  I noted the prospect that the action          15:47:18

11   was -- also may have been brought for an improper purpose of

12   extortion to obtain money from the burden of a groundless

13   lawsuit.  But I didn't actually reach that ultimate conclusion

14   as to whether that was also an improper purpose.  I just -- I

15   didn't quite go that far.                                           15:47:40

16        MR. HOBSON:  Was it, in fact, the Court's inclination

17   to suggest that there was an inclination by my client?

18        THE COURT:  No.  The thing I wanted -- in re-reading

19   this, I remember what my mind was.  And my mind was that fees

20   were appropriate and should be assessed against Mr. Lassen         15:48:00

21   under Subsection II and under Mr. and Mrs. Parenteau under

22   Subsection III.  But I do remember that my mind was not to

23   assess Mr. Lassen fees under Subsection III due to the improper

24   purpose of the parents.  I did not, in my mind, reach a

25   judgment that the attorney is liable for the parents' improper     15:48:25

1    purpose absent the attorney's active participation in the

2    parents' improper purpose.  And in my mind, I did not reach a

3    judgment that Mr. Lassen was participating in that active way

4    in the parents' improper purpose.

5           Now, re-reading my order, I didn't say that very well,    15:48:49

6    and one can take my order as assessing fees against Mr. Lassen

7    under Subsection III.  And I'm telling you because I want to be

8    clear about this, that was not what I was thinking and I may

9    have drafted that poorly.  So I think I owe it to everyone -- I

10   can't fix this order.  It's on appeal.  It doesn't change the    15:49:10

11   outcome of the judgment I felt compelled to reach.  But I was

12   not -- it was not in my mind that Mr. Lassen should be assessed

13   under Subsection III but my order, I think the last line I put

14   there I didn't distinguish that carefully.

15          So now, I'm not purporting to change my order.  I lack    15:49:39

16   the jurisdiction to change my order.  It doesn't, in fact,

17   change -- does not, in fact, change the outcome of my order.

18   But I think I owe it to you and to the Court of Appeals to be

19   clear about what my thinking was.

20          MR. HOBSON:  Thank you, Your Honor.    15:49:54

21          Judge, our essential purpose here is not to challenge

22   the Court's, again, order as Your Honor says it is.  But what

23   it is -- what we're essentially looking for is a mechanism to

24   preserve the status quo pending the outcome of the appeal.  And

25   quite frankly, that's the candid reason why we filed it.    15:50:10

1    THE COURT:  And preparing for this, Mr. Hobson, I came

2    into this hearing of the view that I have had for 35 years,

3    that the Court does not have the authority just of its own to

4    forego security and stay a money judgment.  And you didn't

5    really give me authority for that to my satisfaction.  I read          15:50:36

6    your reply.  You cited an Eleventh Circuit case which you say

7    upheld a bond of one quarter of the amount.  I'm not familiar

8    with that line of authority.  I'm not familiar with anything in

9    the Ninth Circuit.  So the one question is, does the Court have

10   discretion not to pick a different form of security but to           15:50:58

11   simply dispense with security on a money judgment.

12       And the second question is, if the Court has -- if

13   there's not an automatic bar there, then what are the factors

14   that ought to come into play and how do they cut in favor of

15   what you seek here?                                                   15:51:19

16       I have a big problem with the threshold question.  And

17   I do need to hear from the other side.  It may call for further

18   briefing because as I have said, my understanding has always

19   been that the Court cannot simply say, well, on balance, we

20   don't think you should be able to execute the judgment and you       15:51:37

21   don't get any security either.  That's not my understanding of

22   what the Court's baseline authority is.

23       But if I do have that authority, then I need to know

24   what factors I should can consider.

25       MR. HOBSON:  Your Honor, I think we have cited the               15:51:53

October 29, 2009 - Motion Hearing

1    Court to the *Townsend* case and the *Rachel versus Banana*
2    *Republic* case.
3            THE COURT:  Look at *Townsend* and all *Townsend* says is
4    the Court has discretion not to require a bond but it does have
5    to require security.  That doesn't help you.                    15:52:07
6            MR. HOBSON:  Bond is security.
7            THE COURT:  Bond is only one form of security.  I can
8    tell you as former appellate litigator, I rarely posted surety
9    bonds.  They are too expensive.  I almost always posted some
10   other form of security that I persuaded the Court was adequate. 15:52:22
11   It could be as simple as a certificate of deposit in a bank or
12   it might be real property liens.  It might be other things but
13   it was security, not just a hope and a prayer.
14           MR. HOBSON:  But, Your Honor, the problem is that Mr.
15   Lassen doesn't have the liquid capital.  And that's what you    15:52:37
16   are describing is a supersedes bond, essentially.
17           THE COURT:  No, I'm not.
18           MR. HOBSON:  Or the alternative.
19           THE COURT:  Okay.  Let me define my technical
20   vocabulary.                                                     15:52:49
21           A super -- to stay the execution of the money judgment
22   you have to come up with adequate security.  It can be a bond
23   under Rule 62.  But it doesn't have to be a surety bond issued
24   by a licensed insurance company.  The Court has discretion to
25   consider other forms of security.                              15:53:06

——— October 29, 2009 - Motion Hearing ———

1          So there is a -- I fear that you are trading,

2    unintentionally trading on a word problem because bond can mean

3    any form of security deemed adequate by the Court or can mean a

4    surety bond issued by an insurance company.  We are past that.

5          MR. HOBSON:  I understand, Judge.  My understanding          15:53:25

6    was -- and I have had that experience in appellate practice as

7    well of obtaining a supersedeas bond.  But my experience was

8    that typically it was a fee for the bond, which paid the

9    company, but then you still had to post some form of security.

10          THE COURT:  You post the security with the surety          15:53:42

11    company, not with the Court.

12          MR. HOBSON:  Correct.

13          THE COURT:  That's why bonds, supersedeas bonds, don't

14    make sense because you have to put up collateral anyway and you

15    pay a premium for it.                                             15:53:54

16          MR. HOBSON:  And I have had cases, as I'm sure Your

17    Honor has, where you just -- you post -- the client has the

18    resources sufficient and they -- you make an agreement to hold

19    it in an account subject to a further court order and so on.

20          Mr. Lassen and -- neither the Parenteaus nor Mr.          15:54:08

21    Lassen have sufficient assets or resources to post $130,000 in

22    that kind of security.  I think *Townsend* stands for, and the

23    other authority we have cited, stands for this proposition that

24    the Court has broad discretion to determine how that -- how

25    much to impose and in addition to require other conditions.      15:54:34

—— October 29, 2009 - Motion Hearing ——

1   And one of the things we have suggested is that Mr. Lassen --

2   the Court could enter an order and Mr. Lassen would agree to an

3   order that other than -- I mean, because it's going to be the

4   way the situation works anyway other than in the ordinary

5   course of business paying, you know, staff, he's not going to          15:54:54

6   transfer assets during the pendency of the appeal.  And it

7   seems to me that would serve -- and because they get -- they

8   have --

9         THE COURT:  Basically saying he should take the

10  benefit of his accounts receivable and work in process that         15:55:11

11  turn into accounts receivable and in collections and operate

12  the business, live on it and when the appeal is over, if he's

13  not successful, then he will come to grips with it.  That's

14  what you are saying?

15        MR. HOBSON:  We're saying a little more than that,          15:55:26

16  that Mr. Lassen would agree if the Court gives us a little time

17  to find some sum of money to indicate that he's serious about

18  it.  I mean, he is serious about it.  This is a difficult

19  situation for all of us to be in and Mr. Lassen to be in.

20        THE COURT:  This is the most dreadful situation for          15:55:44

21  this court.

22        MR. HOBSON:  I understand, Your Honor.

23        THE COURT:  A duty I did not seek and did not wish to

24  have.

25        MR. HOBSON:  None of us are happy about it.          15:55:53

UNITED STATES DISTRICT COURT

———October 29, 2009 - Motion Hearing———

1          So Your Honor, I think that the Court does have broad

2    discretion, and that's what we're looking for.  We think the

3    Court can make orders sufficient to provide for as much

4    security as they have now.  They have already had a look at his

5    assets.  He's a longstanding member of this community and is          15:56:12

6    intending fully to continue to practice law here for the rest

7    of his career.

8          Thank you, Your Honor.

9          THE COURT:  All right.  Mr. Salcido.

10          MR. SALCIDO:  Your Honor, I guess the only point I          15:56:34

11    would make is --

12          THE COURT:  Oh.  There's one other thing about that

13    case that I sued, your client was the good guy in that case,

14    wasn't he?

15          MR. SALCIDO:  Yes, he was.  He was.          15:56:47

16          THE COURT:  I had to sue him.

17          MR. SALCIDO:  Insurance salesman.

18          THE COURT:  I had to sue him because my lawyer told me

19    I had to sue him, and I did everything my lawyer told me to do.

20          MR. SALCIDO:  He's a good lawyer.  Frank Lewis is a          15:56:57

21    good friend.

22          I guess I would say, Your Honor, right here, this is a

23    pretty atypical case in that it's not a case where plaintiff

24    obtained a judgment for money that they lost and that they

25    think the defendant is going to be in danger of leaving town or          15:57:12

—October 29, 2009 - Motion Hearing—

1  hiding the money or something like that.  If you look at the

2  risk to the Prescott Unified, if there's a stay, it's

3  relatively nothing, Your Honor.

4      THE COURT:  Well, actually, Mr. Parenteau (sic),

5  aren't -- if you assume, which I do not prejudge, but if you          15:57:25

6  assume there's some substance to Mr. Hobson's argument, your

7  client doesn't even have what he has to stand on.

8      MR. SALCIDO:  No, they don't, Your Honor.  And I think

9  there was testimony at the trial as to the dire financial

10 situation they are in.                                                15:57:40

11     THE COURT:  Actually, I don't remember that from the

12 trial.  What I remember from the trial is that coming out I

13 thought to the surprise of some people that the Parenteaus

14 didn't live in the school district.  But I don't remember -- it

15 could have been.                                                     15:57:53

16     MR. SALCIDO:  I think it's because they lost their

17 home.

18     THE COURT:  I just don't remember that.  Maybe it was

19 there.

20     MR. SALCIDO:  I guess what I'm saying, Your Honor, is      15:58:00

21 if we wait to see what happens on appeal, the Prescott Unified

22 School District is not going to be hurt irreparably.  It's not

23 going to be hurt very much at all.  They are going have to

24 interest on their judgment.

25     THE COURT:  See, the problem with that, Mr. Salcido,        15:58:17

—————October 29, 2009 - Motion Hearing—————

1  is that if we assume that the Parenteaus have fallen from very

2  good times to very bad times, then isn't it always the diligent

3  creditor that comes up with anything, or maybe the most, just

4  waiting greatly increases the prospect of getting less or

5  nothing.  So there's generally reward for being the diligent          15:58:41

6  creditor and why shouldn't they have the right to try to be the

7  diligent creditor?

8        MR. SALCIDO:  Well, Your Honor, because I think when

9  you look at the way -- what's at risk here, this is a windfall

10  for the Prescott Unified School District.  They are not in the       15:59:06

11  business of getting attorney's fees cases like this.  Every

12  time there's a case -- and when the plaintiffs win the

13  defendants' lawyers usually aren't on the hook personally to

14  pay money.  And they put up some pretty aggressive defenses,

15  Your Honor.  They have an insurance policy, they got paid.          15:59:21

16  What you are talking about on the other side is ruining two

17  families' lives because they don't want to wait --

18        THE COURT:  Ruining two families lives is the very

19  point that no one suggested to me was relevant or factually

20  triggered here.  You tell the Court of Appeals that but no one      15:59:39

21  ever told me that.

22        MR. SALCIDO:  I think $130,000 is going to put a dent

23  in most people's lives.  Most people are going to feel the

24  pinch of getting hit for $130,000, especially when they are

25  plaintiffs in a lawsuit trying to get some help for their son.     15:59:59

1        So that's all I'm saying, Your Honor, is the school is

2    going to be protected.  The insurance company is going to be

3    protected.  It's not like anybody is going to suffer some great

4    risk or exposure if there is a stay granted or de minimus bond

5    of $5,000 or something like that.                              16:00:16

6        THE COURT:  And again, same question to you.  It's not

7    been my understanding that the Court just has this open-ended

8    discretion to say, well, a person can't pay this judgment so

9    we'll stay execution with no bond or a minimal bond and see how

10   the appeal turns out.                                          16:00:37

11       MR. SALCIDO:  I agree.  I'm not saying no bond.  I'm

12   just saying that the risk they run is negligible.  So that's

13   what we're trying to protect is that negligible risk.

14       THE COURT:  I have nothing from you, either.  I have

15   no financial statement, no list of assets.                     16:00:51

16       MR. SALCIDO:  I will be glad to file a financial

17   statement, verify a financial statement within the next 10 days

18   if I could.

19       THE COURT:  All right.

20       MR. SALCIDO:  Thank you.                                   16:01:02

21       THE COURT:  Ms. Staton.

22       MS. STATON:  Thank you, Your Honor.

23       A couple of points, Your Honor.  Mr. Salcido said that

24   the school district would be protected and I guess my question

25   is how?  The Court has said, and I think correctly so, and we   16:01:22

1    acknowledge, that the Court has discretion with respect to how

2    the guarantees should be fulfilled.  And I have looked at

3    the -- I got the reply about the same time the Court did.  And

4    I was able at least to pull off the *Townsend* case.  And it says

5    that -- Rule 62 says that a supersedeas bond may be used to                16:01:44

6    stay execution of a judgment pending appeal.  The Court has

7    discretion to allow other forms of judgment guarantee.  We all

8    agree to that.

9          The issue is that they have never provided -- clearly

10   Mr. and Mrs. Parenteau have provided zero other than a hearsay         16:02:03

11   affidavit through Mr. Lassen as to what their plan is for the

12   security.  And that's really, as we have cited, I think it's

13   *AMG versus Ries*, says that the person who is trying to seek

14   other forms of guarantee has to come up with -- they have the

15   burden to come up with two things:  They have to show the               16:02:29

16   Court, number one, that it is practically impossible for them

17   to come up with a supersedeas bond and then also objectively to

18   form a plan to present to the Court.  There has been no plan

19   that's been presented to the Court.

20         I looked at, Your Honor, the affidavit that Mr. Lassen           16:02:47

21   filed on October 14th and he says, "I do not have unencumbered

22   investments sufficient to meet anywhere near the standard of

23   providing liquid assets to get a bond."  And yet he files in

24   his reply that he has assets to satisfy the judgment if the

25   judgment is to be satisfied.  And he says further, at Page 8,          16:03:15

1    he said, "The defendants would have no problem executing after

2    the appeal is concluded if the judgment is affirmed."  And I'm

3    saying, execute on what?

4        THE COURT:  Well, you know, I read that, and I

5    wondered too.  I thought perhaps what was being said is maybe          16:03:32

6    he's saying there really are assets out there, but maybe he's

7    saying there aren't assets and there won't be then and there

8    won't be now so you are no worse off waiting.  I'm not sure.

9        Mr. Hobson, what was being --

10       MR. HOBSON:  That was my intention, Your Honor.  I          16:03:50

11   mean, I talked about restructuring his life and practice and

12   that was my intention.

13       MS. STATON:  Your Honor, all I can do is just read the

14   clear language of what Mr. Hobson wrote, which is -- and what

15   he said is at Page 10, is that Mr. Lassen has assets to satisfy      16:04:12

16   the judgment if the judgment had to be satisfied.  I mean, that

17   sounds like it's out there.  And Mr. Hobson has said

18   repeatedly --

19       THE COURT:  You have done the debtor's exam.

20       MS. STATON:  I was going to get to that.  We did the          16:04:28

21   debtor's exam.  But here's the problem:  The Court issued an

22   order that allowed us -- that held both Mr. Lassen and Lassen

23   PLC responsible for the debt.  So we sought a debtor's exam for

24   Lassen PLC and Mr. Lassen personally.  We had a very lengthy

25   list of the documents that he was to bring.  He brought          16:04:53

─────────── October 29, 2009 - Motion Hearing ───────────

1  absolutely nothing as it -- zero -- as it related to him

2  personally.  And he objected, saying it was -- all he had was

3  community property, and we're not entitled to execute against

4  community property.  And I said, but you didn't seek a

5  protective order, and aren't we at least entitled to discover          16:05:16

6  to see what it is?  And so that's what we are briefing in front

7  of Judge Anderson right now.  And that's the document that was

8  filed, I think, just as I came into the parking garage.

9          So we have our response and their replies after that

10  that we're entitled to at least discover that.  And that's          16:05:36

11  number one.  And number two, I'm not -- I mean, this isn't

12  exactly my area.  But based on what I have read and what I have

13  been advised by other partners is that we do have an argument

14  that we can attach or go after community assets.  But that's

15  for another day because we're in the process -- that's another     16:05:54

16  issue.

17          With respect to the Lassen PLC, we obtained what they

18  gave us, which was, I recall, two little exhibits or two little

19  pieces of paper, one of which was the accounts receivable and

20  they did not come in with even their account numbers which we      16:06:11

21  asked them to do.  Mr. Lassen said he didn't know it.  He

22  couldn't get it.  I said we'll take a break and I will find you

23  the name -- the phone number so you can call.  He did come back

24  with a phone number and we started the execution on the

25  accounts that we know from Lassen PLC.                              16:06:28

—October 29, 2009 - Motion Hearing—

1       So we have done everything we can, but we have been

2  totally stymied with respect to the personal.  And I have to

3  say, Your Honor, the Court was absolutely correct in saying

4  nobody wants to be here.  And you have to include me in that

5  group.  I sent a letter requesting what arrangements can you          16:06:47

6  make on July 22nd, five days after the Court's order.  And that

7  doesn't include all of the phone calls and all of the e-mails I

8  sent saying, where are we?  We need to move.  Can you do

9  something?

10      And I received that I was going to get a bond and it          16:07:05

11  would be at the end of next week.  Next week came and went,

12  nothing.  And then it just went into a black hole and we heard

13  nothing.  That's why we asked for the debtor's exam.

14      So I have tried to do everything I can to dance around

15  being here under these circumstances.  But we have not been          16:07:21

16  provided with a plan.  We have no idea what the assets are.

17  Mr. Salcido's concept that somehow there's no ramifications to

18  the district is incorrect because if they can't get these funds

19  back then their rates go up through the trust.  So, I mean, it

20  does have an impact.  This is not just a lawyer's game.          16:07:49

21      THE COURT:  My ruling, I thought, was quite clear that

22  I rejected --

23      MS. STATON:  Yes.

24      THE COURT:  -- root and branch the notion that a party

25  otherwise entitled to recover fees under that statute or any          16:07:59

1   somehow forfeits it because they've got insurance.  The

2   insurance company funds the defense and gets the fees.  That

3   just strikes me as completely wrong.

4           MS. STATON:  I understand.

5           THE COURT:  And you don't have to look to your                16:08:16

6   experience rating to the detriment -- you don't forfeit the

7   fees when you spend extra money to get insurance against third

8   party claims.

9           MS. STATON:  I was just responding to that, because I

10  want to make it at least that clear.                                  16:08:34

11          Your Honor, if there were a plan that would provide

12  adequate guarantee, that would be one thing.  But weeks and

13  weeks and weeks have passed, and we have seen nothing.  And

14  honestly, I do not know whether the question the Court asked

15  Mr. Hobson is, does the Court have the authority to, under the       16:08:59

16  Tenth or Eleventh Circuit --

17          THE COURT:  Eleventh.

18          MS. STATON:  Eleventh Circuit where they, I guess, sua

19  sponte or maybe at request, move the bond from a 2.2 million to

20  500,000 and a reduction of 25 percent.  Honestly, I didn't have     16:09:12

21  a chance to research it, so I don't know what the Ninth Circuit

22  would say.  And I don't even know if Mr. Hobson has correctly

23  stated the proposition, frankly.  So that's some research I

24  would have to do.

25          All I know is that I would like to get a firm plan           16:09:31

─────────── October 29, 2009 - Motion Hearing ───────────

1    with designated, firm, articulated assets that would be a

2    guarantee to my clients.

3              And I have nothing further to add, Your Honor.

4              THE COURT:  All right.  Any reply?

5              MR. HOBSON:  Yes, Your Honor.                          16:09:51

6              Let's be clear.  Mr. Lassen and I went out at the

7    judgment debtor's exam.  We got the name of the bank and the

8    account numbers, and we provided them to Ms. Lassen (sic), and

9    they garnished them the following Monday.

10             MS. STATON:  Staton.                                   16:10:11

11             MR. HOBSON:  There was no hiding of assets.

12             With respect to -- and this is a matter which is being

13   briefed right now in front of Judge Anderson.  With respect to

14   his personal assets, Mr. Lassen said, look, my personal assets

15   are my community assets and they are under a case called       16:10:23

16   *Flexmaster*, in Arizona, those are not subject to attachment

17   unless Mrs. Lassen was named in as a party.  She was not.

18             And we made that objection.  We were clear about it.

19   We weren't hiding anything in that respect.  And Judge Anderson

20   says -- and they say they are entitled to at least the         16:10:47

21   discovery to see if it leads to collectable assets, and I think

22   the answer to the question -- and we just filed our memorandum,

23   which was due today, I think the answer to the question is no

24   because they are not entitled to collect those assets.  Mr. and

25   Mrs. Lassen have been married a long time.                      16:11:03

UNITED STATES DISTRICT COURT

October 29, 2009 - Motion Hearing

1      THE COURT:  I know that issue very well.  In fact, Mr.

2   Hobson, the last appeal I argued in my law practice in the

3   Arizona Court of Appeals involved very similar issues about the

4   Arizona statutory requirement that both spouses be named on a

5   judgment in order to collect on community assets.  So I know          16:11:22

6   that issue generally.

7      MR. HOBSON:  Sure.

8      THE COURT:  But --

9      MR. HOBSON:  I'm sorry.

10      THE COURT:  And I'm not prejudging how that would play       16:11:29

11   in a situation like this in which the Court's sanction

12   authority under federal statute is brought into play.  And we

13   do not require lawyers to have their spouses join in

14   representing people.

15      So I don't have any answers to that, but I suspect          16:11:46

16   it's going to take a little bit of thought.

17      MR. HOBSON:  They have cited, Your Honor, a case

18   involving -- essentially it's in the Arizona Attorney magazine,

19   a case involving foreign judgments brought to Arizona, not

20   our -- not the facts.                                              16:12:02

21      Your Honor, with respect to the authority the Court

22   asked about, I submit that *Townsend*, in fact, does say exactly

23   what we quoted it to say.  "The Court requires a posting of

24   bond in order to obtain a stay of a money judgment or the

25   payment of the money sanctions pending appeal.  Courts have       16:12:18

1  deviated from the terms of Rule 62 when equities so required."

2  Goes on to say, "While the most common justification for

3  allowing alternatives is the financial hardship the bond may

4  impose, the District Court has broad discretionary power to

5  waive the bond requirement if it sees fit."                    16:12:34

6        I submit there is Ninth Circuit authority to do

7  what --

8        THE COURT:  Depends on what they are talking about.

9  Because I read that, and, of course, I had to read it quickly

10  also, but I read that as talking about the form of security,  16:12:45

11  not whether to require security.  Maybe it's broader than that.

12        MR. HOBSON:  And, Your Honor, to be clear, and I'm my

13  usual inarticulate self, we are not saying Mr. Lassen refuses

14  security.  He will make an effort to find some security.

15  Counsel did make efforts to talk with Mr. Lassen.  Mr. Lassen  16:13:09

16  made significant efforts to obtain a bond.  And it's just

17  impossible.  It's impossible.  That was -- at the end of the

18  day, that's when Mr. Lassen came to me and said, "I don't know

19  what to do."  And quite honestly, this is a conundrum.

20        But I submit that the Court has some significant        16:13:29

21  discretion to craft a -- if at the end of the day, if he has

22  not transferred -- and he wouldn't do that because that would

23  be fraud on judgment creditors in any case.  If he can continue

24  to practice, heck, if Mr. Lassen manages to a multimillion

25  dollar settlement fall in his lap, something every plaintiff's  16:13:53

—October 29, 2009 - Motion Hearing—

1    lawyer prays for, I'm sure he would post the bond immediately.

2    He just doesn't have those assets.

3        The best hope for them collecting at the end of the

4    day is to recognize that the best hope is to permit him to

5    continue to practice, to accrue the interest, and if the they    16:14:12

6    succeed on their appeal, he will sit down and make arrangements

7    to pay them monthly.  You know, I don't know what else can be

8    done, Judge.

9        Thank you, Your Honor, for your, you know, willingness

10   to listen.  And I appreciate the Court setting this oral    16:14:32

11   argument.

12       THE COURT:  All right.  Mr. Salcido.

13       MR. SALCIDO:  I have nothing, Your Honor.

14       THE COURT:  All right.  Well, again, at the risk of

15   slight repetition, I cannot address the whole panoply of issues    16:14:48

16   that are in these briefs that are matters that could and should

17   have been brought up on the original motion and it could and

18   should have been brought up on a timely Rule 59 motion.

19       As to the narrow issue of staying execution on some

20   terms and circumstances, I want to invite, but not require, Ms.    16:15:27

21   Staton to file a sur-reply on this reply that I haven't had the

22   chance to thoroughly study either.  So you don't have to, but

23   you are most welcome to.

24       Do you want to do that, or do you want to give me a

25   time by which you will either have filed something or not?    16:15:50

UNITED STATES DISTRICT COURT

—October 29, 2009 - Motion Hearing—

1    MS. STATON:  The answer is I do want to do it, and

2  it's at the Court's pleasure.  What's today?  Thursday?  Next

3  Thursday?

4    THE COURT:  Let me tell you, I have moved this as fast

5  as I can consistent with the rule.  So I set this hearing the          16:16:07

6  day after the reply brief was due.

7    MS. STATON:  I will go faster.  Whatever the Court

8  wants.  But I would like to do the sur-reply.

9    THE COURT:  Let's set -- tentatively set Tuesday for

10  the time for you to file that.                                         16:16:33

11    MS. STATON:  That's fine.

12    THE COURT:  And we might revisit that in a minute.

13    Then I need to determine what authority I have.  If I

14  don't have the authority then this may be an easy dreadful

15  ruling as opposed to a difficult dreadful ruling and simply          16:16:53

16  deny this relief.  If, in fact, I do have authority, then I

17  have to get into the details that I have not been favored with

18  on these summary briefs and memoranda.

19    And my sense then would be that I would want the

20  defendants to be forthcoming with the Court and with -- I mean       16:17:18

21  the plaintiffs and Mr. Lassen to be forthcoming with a concrete

22  plan, not a generalized order that says don't convey assets and

23  don't do anything, but something concrete that would allow me

24  to look and say, yes, here's what's potentially there.  And I

25  could craft an order that gives reasonable assurance that it          16:17:49

1    will still be there at the end of this appeal.

2          So if I have the authority to do that then I will do

3    that.  I will pursue those -- make those judgments.  I need to

4    have it based on specifics not generalizations.

5          MR. HOBSON:  Yes, Your Honor.                          16:18:13

6          THE COURT:  Now, as with everything, that is far

7    better done with all the parties and interests sitting down and

8    having candid -- we have already had a debtor's exam, but

9    having a candid disclosure.  Because the probability is that if

10   you all do that, there will be something there that will be    16:18:30

11   acceptable to the district and preferable to the continuation

12   of this fight.  And if not, you will present it to me and I

13   will make my best judgment once I determine I have some kind of

14   authority, such as Mr. Salcido and Mr. Hobson's saying I have

15   not heretofore been aware that I have.                        16:18:56

16         So I would -- I will get your draft.  If I go that way

17   I'm telling you now what -- that's what I'm going to tell you

18   to do, to have that exchange promptly and see if you can work

19   something out.  And you know, if you can, of course you present

20   it to me and I will move it as promptly as possible to make my  16:19:23

21   best judgment as to what would be a fair and appropriate set of

22   terms and conditions.

23         I'm sorry, ma'am.  Go ahead.  We have people on the

24   phone because I had asked the parties to -- counsel to have

25   their clients and a party representative from the district     16:19:43

—October 29, 2009 - Motion Hearing—

1    here.  I do want to speak to something that it is beneficial to

2    have their presence here in just a minute.

3          So that's the outline of how I'm going to proceed.

4    And the reason I'm resolving all this is I wanted to tell

5    you -- and I will do a written order on these other matters.  I          16:20:07

6    will get that out very quickly.

7          When is your appeal brief due, Ms. Staton?

8          MS. STATON:  November 23rd.

9          THE COURT:  All right.  We'll have this order out

10   sometime next week so it will be in plenty of time.  That issue          16:20:20

11   about Mrs. Lassen not being a party to this order and how that

12   plays with the state procedural requirements, I understand that

13   issue.  By the way, that last appeal I won that and I got the

14   wife out of everything on that ground.  So I understand the

15   issue.          16:20:57

16          But that is, at most, a delaying tactic because that

17   issue can be addressed by other proceedings to bring the wife

18   in assuming it's necessary under federal procedure.

19          So I would hope that you all could dialogue about this

20   problem and get to the substance of it without giving up          16:21:17

21   whatever procedural delaying opportunities you think you have.

22          The other thing I wanted to bring up, and I only

23   wanted to bring this up after telling you what my rulings are

24   or what will be, and I have done that, is to ask you why is

25   this case not in the Ninth Circuit mediation program?          16:21:45

—— October 29, 2009 - Motion Hearing ——

1    MR. HOBSON:  Your Honor -- I'm sorry, Your Honor.  Mr.

2    Lassen indicates that the Ninth Circuit inquired and then

3    rejected it for mediation.

4    MS. STATON:  Did you talk to them?

5    THE COURT:  Let me be very clear about my question.     16:22:08

6    Everything that goes on between you all and the mediators is

7    not subject to judicial inquiry.  So I'm not -- I don't mean to

8    be probing into the discussions you have had, the substance of

9    them.  Those are all beyond the purview of the Court.

10    But I know from my practice experience that the Ninth    16:22:28

11   Circuit mediation program is superb.  The mediators are

12   enormously talented, and that this is a case that obviously has

13   grave prospect for everybody to lose a lot.  And it's obvious

14   to me from the responsibility I have had doing my job in this

15   case is that there are extremely strong feelings in this case.  16:23:06

16    So it looks like a case that's tailor made for the

17   assistance of professional facilitators to create communication

18   where it may not otherwise exist and to help parties look

19   beyond their immediate feelings, their immediate perceived

20   advantages, to explore a long term advantage that's compatible  16:23:29

21   with other people's long term interest.

22    So I do know that the mediation program in the Ninth

23   Circuit does accept recommendations from district judges.  I

24   have never done that in a case, because I know how good they

25   are and they do a good job at picking cases.  Having gone      16:24:05

UNITED STATES DISTRICT COURT

─────── October 29, 2009 - Motion Hearing ───────

1    through it many, many times, in virtually every case I had as a

2    lawyer, I would write them letters to ask them and they would

3    always take my cases into mediation and almost all of them got

4    settled.

5              My sense here is that there may be impediments in this    16:24:21

6    case going into the mediation program, and the obvious one is

7    the judgment execution.  The district would have to make a

8    decision to forego execution for some period of time in order

9    to make this stable enough to pursue the mediation program.

10             So that's something that seems obvious to me would    16:24:51

11   have to be done to take advantage of that opportunity.  They

12   also suspend the briefing, and you have already filed your

13   opening brief.

14             So I don't know how that plays within the -- as

15   somebody who is a frequent consumer of mediation services,    16:25:15

16   wouldn't bother me that one of the briefs has already been

17   filed.  It may be that the district would want to have it

18   agreed that its brief would be put off pending a mediation

19   effort, or maybe they would want to file their brief and still

20   mediate.  I think all of those are possibilities.    16:25:34

21             And they -- the program has their own parameters from

22   their vast experience that they have a sense for what kind of

23   cases are good candidates and what are not.  And if you fit

24   their profile of a bad case, it's very hard to talk them into

25   taking your case.  I don't know what all their parameters are.    16:25:51

UNITED STATES DISTRICT COURT

─────────── October 29, 2009 - Motion Hearing ───────────

1   My own sense is this is a case in which there are much larger,

2   longer term systemic issues and values at stake than appear

3   from the immediate spear point of the battle that we're at

4   right now.

5           So what I am saying is, if you want, I will call them    16:26:16

6   and ask them to give serious effort to putting your case in

7   their mediation program.  I don't know that my voice would

8   count.  I would assume that it would count for something.  And

9   if, in fact, they took you out, usually cases go out of the

10  program because one party or the other declines to participate.  16:26:39

11  And they want both sides, everyone, to come at it with a

12  commitment to making an earnest effort to resolution.  And if

13  anybody checks out they don't get involved.

14          I don't know if that's why this case is not there, and

15  I guess I don't want to probe you all for the reason I said     16:27:02

16  earlier.  But if it's a matter -- so part of me is wanting to

17  urge you, and I have already told you what my rulings are going

18  to be so there 's no implied threat here that my rulings would

19  be affected by what you all do with this.  I guess in my mind

20  it breaks down to the first question, is there a willingness on  16:27:25

21  all sides to step back to take a deep breath and see if you can

22  get into this track to explore a restoration of communication

23  and hopefully an obtaining of a longer perspective.  And if you

24  do, and you want me to, I will gladly contact them and tell

25  them that I think that despite all the problems in this case,    16:27:55

──────October 29, 2009 - Motion Hearing──────

1    this case is very much worth the expenditure of their talented

2    resources.  Make an effort at it.

3             Now, having delivered -- now I did want -- Mr. and

4    Mrs. Parenteau, I assume you are on the phone.  Is that

5    correct?                                                    16:28:16

6             MR. PARENTEAU:  Yes, Your Honor.

7             THE COURT:  Who is here for the district?

8             MS. STATON:  Larry Ward, Your Honor.

9             THE COURT:  Mr. Ward, what's your position in the

10   district?                                                   16:28:23

11            MR. WARD:  I represent the Arizona School Trust.  I'm

12   a senior claims consultant in litigation.

13            THE COURT:  You are the guy with the checkbook and the

14   deposits, right?

15            MR. WARD:  That's correct, Your Honor.             16:28:33

16            THE COURT:  So Ms. Staton, because of the status of

17   this case, you don't view it as having systemic consequences

18   for the district and that's why your self-insurance pool is the

19   representative?

20            MS. STATON:  Because that's the person I could find.  16:28:49

21   That's as close as I could get to a representative.

22            THE COURT:  That's a pretty good answer considering

23   how recently I asked you to have someone available.

24            MS. STATON:  He actually went through a snowstorm.

25   He's in Flagstaff.  But he made the phone call at 3:00.    16:29:01

─────── October 29, 2009 - Motion Hearing ───────

1          THE COURT:  I thank him for doing that.  I should have

2    thought of this earlier.  It just occurred to me earlier today.

3    Now, if this does go forward, obviously there's going to be

4    systemic interest of the district involved.  So you are going

5    to need not just your insurance pool but a district                    16:29:18

6    representative.

7          I do not want to put anybody on the spot.  This is

8    what we're going to do.  We're just about done.  We're going to

9    recess this hearing.  I'm not going to direct anybody to do

10   anything, but since there has to be a unanimous desire to              16:29:32

11   participate in the Ninth Circuit mediation program I will just

12   tell you that I will require nothing.  But if you all agree

13   that you would like to make another effort at the mediation

14   program and that you would like for me to put in a word for

15   that, and if I do, I won't be speaking with them about the            16:29:57

16   substance of this other than to express my general hope that

17   they would pursue it and my belief that this is a worthy case

18   for their efforts.  I wouldn't get into my views.  They can

19   read my opinions if they want to see what my professional

20   judgments were.                                                       16:30:19

21          And then I need to have someone communicate to me that

22   you all want me to do that.  And the way I do it, so that no

23   one knows who it is that did or did not ask me to do it, I'm

24   going to direct -- I usually direct plaintiffs' counsel to

25   communicate to me on things that all the lawyers have had to          16:30:37

————— October 29, 2009 - Motion Hearing —————

1    communicate on.

2            So Mr. Hobson, if everyone decides that, A, they want

3    to do that and you want me -- and you might decide you want to

4    do that but you don't need my phone call to them, or you may

5    decide you don't want to do it.                              16:30:53

6            But if you do want to do it and you do want me to make

7    the phone call I'm directing you, Mr. Hobson, let's have a

8    record, just file something in the record saying all parties

9    have conferred and all parties request the district judge to

10   express to the mediation program the judge's view that this is    16:31:11

11   a worthy case for their effort so I have it on the record that

12   you all conferred, you all agreed, and I was requested to do

13   that.  And if I don't get a request from you like that, then

14   that's the end of it.  So everyone's anonymity is protected as

15   to what course of action they want to take.                  16:31:32

16           MR. HOBSON:  Except I will know, obviously.

17           THE COURT:  You will all know but your anonymity is

18   protected from me.  I will never know anything.  You all will

19   know everything.  That's usually the way it is.

20           Does anybody have any -- I don't want to cut anyone    16:31:45

21   off with this discussion.  If anyone has any thoughts about any

22   of this I welcome those thoughts right now.  Mr. Hobson?

23           MR. HOBSON:  No, Your Honor.  Thank you.

24           MR. SALCIDO:  Nothing here, Your Honor.

25           MS. STATON:  Nothing here.  Thank you, Your Honor.    16:31:58

1        THE COURT:  Very well then.  The motion is taken under

2    advisement.

3            (Proceeding concluded at 4:32 p.m.)

1

2

3

4

5

6                      C E R T I F I C A T E

7

8          I, LAURIE A. ADAMS, do hereby certify that I am duly

9    appointed and qualified to act as Official Court Reporter for

10   the United States District Court for the District of Arizona.

11         I FURTHER CERTIFY that the foregoing pages constitute

12   a full, true, and accurate transcript of all of that portion of

13   the proceedings contained herein, had in the above-entitled

14   cause on the date specified therein, and that said transcript

15   was prepared under my direction and control.

16         DATED at Phoenix, Arizona, this 19th day of November,

17   2009.

18

19                              s/Laurie A. Adams

20                              _____

21                              Laurie A. Adams, RMR, CRR

22

23

24

25